71  351
71  426

KANSAS & TEXAS COAL COMPANY *v.* GALLOWAY.

Opinion delivered May 9, 1903.

1.  MALICIOUS PROSECUTION—BURDEN OF PROOF.—In malicious prosecution it devolves upon the plaintiff to show affirmatively both malice and a want of probable cause upon the part of the defendant in instituting the prosecution complained of.   (Page 356.)

2.  EVIDENCE—FORMER TESTIMONY.—The testimony of a witness on a former trial may be proved by any witness who was present and heard him testify.   (Page 356.)

3.  SAME—COMPETENCY.—The testimony of the judge who dismissed the prosecution alleged to have been malicious, and his written opinion therein, tending to show that he hesitated in dismissing the prosecution, are admissible to rebut the charge of a want of probable cause.   (Page 359.)

4.  MALICIOUS PROSECUTION—PROBABLE CAUSE.—To instruct that probable cause is such a state of facts known to and influencing the prosecution as would lead a man of ordinary caution, acting upon facts within the knowledge of the prosecutor *or which he could have ascertained by reasonable diligence*, to believe that the accused was guilty is erroneous, as imputing to the prosecutor a knowledge of whatever he could have ascertained by the exercise of reasonable diligence, although there was nothing to put a cautious man upon inquiry.   (Page 360.)

5.  SAME.—One about to institute a crimnal prosecution is under no duty to make inquiry of the suspected person as to his guilt.   (Page 361.)

6.  PROBABLE CAUSE—ADVICE OF COUNSEL.—It is a good defense to an action for malicious prosecution that, in instituting the prosecution, defendant acted upon the advice of counsel learned in the law, after placing before him all the facts in defendant's possession.   (Page 361.)

7.  DAMAGES—INSTRUCTION.—In an action for malicious prosecution it is error to charge that if the jury find for the plaintiff he is entitled to recover such damages as will compensate him for the peril occasioned him in regard to his life and liberty, if there was neither allegation nor proof of peril of life.   (Page 363.)

Appeal from Scott Circuit Court.

STYLES T. ROWE, Judge.

Reversed.

*Hill & Brizzolara,* for appellant.

·The court erred in excluding the evidence offered by appellant. 4 Wend. 591; 4 Cush. 217; Newell, Mal. Pros. 303; 3 Esp. 7; 63 Ia. 529. The court adopted the wrong definition of probable cause in the third, sixth and seventh instructions. 32 Ark. 166; 32 Ark. 605; *Ib.* 763; 33 Ark. 317; 63 Ark. 387; 64 S. W. 219; 41 Fed. 898, 910. Diligence is not the test. 24 Ill. App. 289; 58 Mo. App. 37; 33 Me. 331; 109 Cal. 365; 123 Cal. 26; 69 Ia. 562; 95 Fed. 926; Newell, Mal. Pros. 319. The court also erred in stating the rule as to advice of counsel as a justification and as bearing on the question of malice. 1 Am. & Eng. Enc. Law (2d ed.) 899; 98 U. S. 187; 94 Fed. 52; Cooley, Torts, * 183; 19 Am. & Eng. Enc. Law (2d ed.) 685-6-7; 77 Ill. 164; *Ib.* 172; 33 N. W. 334. No evidence shows any malice or want of probable cause. 32 Ark. 773; Newell, Mal. Pros. 277, 278; 19 Am. & Eng. Enc. Law, 669-671.

*Robert A. Rowe,* for appellee.

· Advice of counsel is no justification, unless given upon a full and fair understanding of the facts. 23 Neb. 511; 50 Mo. 83; 37 Md. 282. Consulting and obtaining the advice of an attorney who is not disinterested and unbiased is not sufficient to constitute a defense. Newell, Mal. Pros. § 4, p. 314; 71 Me. 555; 26 Am. Rep. 353. As to definition of "malice" necessary to be proved, see: 14 Am. & Eng. Enc. Law, 22; Newell, Mal. Pros. §§ 2-10. It was the duty of Brown to use proper diligence to ascertain the true state of facts before proceeding to have appellee arrested. 14 Am. & Eng. Enc. Law 55; 81 Ala. 220; 71 Ill. 475; 62 Ill. 107; 15 Mo. App. 373; 80 Ala. 382; 23 Neb. 511. He is charged with actual knowledge of all facts he could have ascertained by reasonable diligence. 14 Am. & Eng. Enc. Law, 55; 38 Mo. 13; 50 Mo. 83; 37 Md. 282; 59 Mo. 557; 50 How. Pr. 105; 26 Ill. 259; Newell, Mal. Pros. 318, 319, 320-1-2. The opinion rendered by the district judge is not a judgment. 12 Am. & Eng. Enc. Law, 59; And. L. Dict. 355; 16 How. 287; 6 Wheat. 399; Freeman, Judg. § 2. There

was no error in the exclusion of evidence of testimony adduced at the alleged malicious prosecution. 2 Greenl. Ev. § 457; 4 Wend. 591; 3 Oh. 52; 14 Am. & Eng. Enc. Law, 58; 83 Ill. 291. The instructions as to probable cause were correct. 14 Am. & Eng. Enc. Law, 24, 26, 27; 116 Ind. 146; 60 Miss. 916; 58 Ia. 317; 81 Ala. 220; 64 Tex. 25; 4 Dana, 120; 55 Ind. 461; 82 Ind. 421, 42 Am. Rep. 505; 71 Ill. 475; 62 Ill. 107; 15 Mo. App. 373; Newell, Mal. Pros. 274, 319, 590. The instruction as to advice of counsel was also correct. Newell, Mal. Pros. 4, 5, 78; 22 Mich. 300; 71 Ill. 475; 20 Ohio, 119; 25 Pa. St. 275; 59 Mo. 557; 36 N. W. 775; 26 Ill. 259; 81 Ill. 478; 59 Ind. 500; 29 N. W. 743; 49 Mich. 286; 7 Tex. 603; 58 Am. Dec. 85; 11 Pa. St. 81; 36 Conn. 56; 50 Me. 308; 55 Barb. 194; 10 Minn. 350; 12 Pick. 324; 57 Ia. 107; 39 Minn. 107; 35 Fed. 466; 116 Ind. 146; 145 Mass. 314; 17 Att. 466; 69 Ia. 741; 18 W. Va. 1; 76 Mo. 660; 16 Minn. 182; 39 Mich. 222; 22 Fed. 217; 15 La. Ann. 672.

BUNN, C. J. This is a suit for malicious prosecution, originating in the Greenwood district circuit court of Sebastian county, and tried on a change of venue in the Scott county circuit court by a jury. Verdict and judgment in the sum of $500 in favor of the plaintiff, and the defendants duly and in due time appealed to this court.

The malicious prosecution complained of in the present suit arose from the following circumstances, according to the abstracts in the case: There was a strike, commencing February 1, 1899, throughout this (Sebastian) county, which embraced the miners in the employment of the Kansas & Texas Coal Company at Huntington in said county. The said coal company employed a great many negroes, presumably to fill the places of the strikers, some of whom it had shipped by carloads from other counties. We gather, from the evidence and statements made in the progress of the trial in the court below, that this strike was the occasion of much excitement and anxiety in the community, and on the 22d day of April, 1899, the Kansas & Texas Coal Company, being extensively engaged in operating its mines in the vicinity of the said town of Huntington, sued out in the United States circuit court, of the Western district of Arkansas, at Fort Smith, an order of injunction, whereby said court enjoined and restrained said striking miners from interfering in any manner whatsoever with the business of said coal company; from intimidating its employees, using force or violence or unlawful persuasion to induce them to

leave the employment of said coal company; from deterring others from entering the services of the said company, and from doing any act to prevent said company and its managers and employees from exercising free control over its said business and its property there or elsewhere; and the plaintiff herein, with one George Bunch and others, was made defendant in said injunction proceeding, served with process, and was put under said order of injunction and restraint, and such injunction was in full force and effect, when an encounter of considerable violence occurred in the said town of Huntington between the said Gus Galloway, George Bunch and McCowan, the town marshal, all alleged to be of the strikers or in strong sympathy and close connection with them, on the one part, and one Albert Evans, an employee of the company, and one Battles, on the other part, as set forth in an affidavit of Joseph M. Hill, one of the attorneys of the company, made on the 5th of July, 1899, as part of a petition of the company for a warrant of arrest to have the plaintiff brought before said court for violating said order of injunction on the occasion named, which was on the 3d day of July, 1899, and, leaving out mere formal parts, is as follows, to-wit: "That Gus Galloway and George Bunch, two of the defendants named in said complaint (for the injunction), and upon whom process had been duly served, did on the 3d day of July, 1899, intimidate, threaten, maltreat and attempt to coerce said Albert Evans, one of the employees of the plaintiff, by beating, cursing and abusing him, the said Albert Evans; that the object and purpose of such intimidation, coercion and threats was to prevent the said Albert Evans [from] laboring for the plaintiff, and to injure him on account of the fact that he was employed by the plaintiff. Wherefore writ of attachment was prayed against the said Bunch and Galloway, that they be brought before the court, and there dealt with according to law."

On the 7th of July, 1899, another affidavit by the same party, as attorney for the coal company, was filed in said court charging the plaintiff herein and others with the violation of said order of injunction on the 5th day of July, 1899, which said affidavit, after setting forth the petition or order of injunction made thereon, contained the recital and prayer, to-wit:

"That, while said injunction was still in force and effect and after service upon said defendants, to-wit, on the 5th day of July, 1899, the said defendants, in furtherance of a conspiracy and combination to hinder the plaintiff and its officers and employees in

the free and unhindered control of its business, did violate said injunction in the following manner, to-wit, the said George Bunch and Gus Galloway did direct and assist in the formation of a large number of persons in the town of Huntington who avowed their intentions of going to the mine of the plaintiff (coal company) known as "Mine No. 53," and then and there forcibly and violently eject the employees of the plaintiff therefrom, and cause said employees to cease working for plaintiff; that, in furtherance of said combination and conspiracy, in which the said George Bunch and Gus Galloway participated, sentinels were established along the various roads leading between the town of Huntington and said mine. No one was permitted to go to said mine except by the consent of said sentinels, and emissaries were sent to the employees of the company to unlawfully persuade them to leave the employment of the company. And by carrying out said threatening combination and conspiracy the said George Bunch and Gus Galloway, in company with various and divers others, did intimidate and cause many of the employees of the company to leave its employ on account of fear of personal violence to them, the said employees, by reason of such threats made by said combination of persons. That said George Bunch and Gus Galloway participated, aided, assisted and abetted in all the acts and deeds of such combination and conspiracy existing in the town of Huntington on the 5th day of July, 1899." Prayer for attachment and arrest of said Gus Galloway and George Bunch, and that they be dealt with according to law for contempt in violating the injunction of said court.

Galloway was accordingly arrested on the warrant issued on the two affidavits on the 7th of July, 1899, by the United States marshal of the district, and carried to Fort Smith, and there by the order of said court was committed to the United States jail, where he was imprisoned six or seven days to await the investigation of the charges of contempt made against him in the affidavits aforesaid, filed by the attorney of the said company as aforesaid, and on the 14th day of July, 1899, on the hearing of the evidence in the cause, he was fully discharged by said court.

This arrest and imprisonment and subsequent discharge of the plaintiff, Gus Galloway, constitute the ground of this his suit for malicious prosecution against the said Kansas & Texas Coal Company and its manager, Bennett Brown, who answered the complaint, the first paragraph of which is a demurrer to the complaint, and in the other paragraphs they specifically deny each and

every material allegation of the complaint, to which complaint are attached the warrant of arrest, the injunction of the court in full, and the judgment of discharge of the court in the contempt proceedings, and they are made exhibits thereto.

Trial before a jury. Verdict and judgment for plaintiff in the sum of $500 against the defendants, and they in due time and in due form appeal to this court.

In this kind of proceeding it devolves upon the plaintiff to show affirmatively that there was both malice and a want of probable cause on the part of the defendants in the prosecution of the contempt proceedings against the plaintiff. It is not the object of the investigation in this suit to determine the guilt or innocence of the defendant in the former or contempt proceedings, but solely to determine whether that proceeding was prosecuted by the defendants in this suit maliciously and without probable cause.

The first error complained of in this action was the trial court's exclusion of the testimony of the said Gus Galloway offered by the defendants to reproduce the testimony of Albert Evans as given in the contempt proceedings, the court holding that the testimony of Evans himself as to what he testified in the contempt proceedings is alone admissible for that purpose. This testimony of Evans was directly to the effect that on the occasion named in the first affidavit, on the 3d of July, 1899, he (Evans) was set upon by McCowan, the town marshal, Bunch and Galloway, by them called a "scab" and other opprobious terms, and a pistol demanded of him; that he denied having a pistol, and other things, the effect of which was to convict Galloway of a violation of the injunction, if believed, and thus to put a different face entirely upon the conduct and nature of the parties to that encounter; said marshal and Galloway and Bunch claiming to have been in the discharge of official duty in attempting to arrest Evans for carrying a pistol, and the latter asseverating that he had no pistol when the alleged attempt to arrest him was made, but that the pistol he had and subsequently used on the occasion he took from Bunch in the progress of the melee between them on the occasion.

This evidence of Evans, who, it appears, was at the time of this trial in the state penitentiary for assaulting the said Bunch on the occasion named, was of vital importance to the defense in this case, and so the question is solely as to the court's refusal to permit Galloway to testify as to what Evans testified in the contempt proceedings.

The question was discussed in *Burt* v. *Place,* 4 Wend. 597, as long ago as 1830, in which the court sustained the view of the trial court in this case. Upon this decision Greenleaf (2 vol. Ev. 17 ed. § 457) cites with approval the case of *Burt* v. *Place, supra.* In still an older case, *Richards* v. *Foulke,* 3 Ohio, 52, decided in 1827, it was held that the evidence of a witness in the former trial can only be reproduced by the witness himself.

The case of *Burt* v. *Place, supra,* was manifestly influenced by the very palpable fraud and oppression shown in the former trial, while the case of *Richards* v. *Foulke* went off on the familiar doctrine that the best evidence attainable is alone admissible to prove any fact, and also upon another misconception of the law, that is, that the case on trial is to be governed by the facts of the case, other than such facts as were before the court and in the mind of the prosecutor in the former proceeding. In these exceptional cases the fact that malicious prosecutions forms an exception to the rule as to the admission of evidence appears to have been overlooked.

The true doctrine approved by all the authorities we have been able to examine, other than those named, is plainly and argumentatively set forth in *Bacon* v. *Towne,* 4 Cushing (58 Mass.), 217. In that case the defendants, having opened and stated their defense, offered Mark Doolittle, Esq., the magistrate, to prove what the testimony before him was on the part of the government to prove probable cause and rebut the allegation of malice; but the presiding judge ruled that this could only be done by the same witnesses who were produced on the stand, or their depositions, except as to testimony then given by the defendants or their wives. To this rejection of evidence the defendants objected. In speaking for the court, Chief Justice Shaw said: "The court are of opinion that this exception must be sustained. It was of vital importance for the defendants, in answer to any proof of want of probable cause, to prove affirmatively that they had reasonable and probable cause for the prosecution at the time the proceedings in it were commenced.

"Probable cause is such a state of facts in the minds of the prosecutor as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty. The facts testified to on the examination may have been very influential in raising such suspicion or belief, and are therefore competent evidence to show the ground he had

of cause to believe, whether they were true or not. They are therefore facts material to the issue, to be proved by any witnesses who can testify to them, as well as by those who testified at the examination. These witnesses may be dead, absent or insane; they may have forgotten them, or refuse to testify to them, or even deny them; it is not the less true that they did so testify, and if the testimony was of a character to evidence a belief or strong suspicion, in the mind of a reasonable man, of the guilt of the accused of the crime charged, they had a direct bearing on the issue of probable cause or not, in the action for malicious prosecution."

"Probable cause does not depend on the actual state of the case, in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution."

"The only cause we are aware of which seems to countenance an opposite rule is that of *Burt* v. *Place,* 4 Wend. 591, which was a case of gross fraud and oppression under the forms of law, practised by the defendant himself, and in which there was abundant evidence of malice, groundlessness and fraudulent design in the suits complained of as malicious." Citing authorities. This ruling is supported by *Goodrich* v. *Warner,* 21 Conn. 432, and a large number of other cases.

The inquiry is not as to the facts which constitute the defendant in the former proceeding guilty or innocent, but rather what was said by witnesses in the former proceeding, which, it is to be presumed, determined whether or not there was probable cause for the prosecution, not that the defendants were guilty or innocent, for the rule is that, while the defendant in the former proceeding may have been found innocent and acquitted, yet that does not show a want of probable cause in the prosecution, it being not conclusive of anything as against the prosecutor, but a mere circumstance which, taken along with others, may induce the jury to find that there was a want of probable cause, and also that there was malice. The rule is quite different if the defendant in the prosecution is found guilty, for that is conclusive of the fact that there was probable and reasonable cause for the prosecution. Some authorities, probably a majority of them, go to the extent of holding that this is the effect of a conviction, notwithstanding the fact that the judgment of conviction may be reversed on appeal, and there is the best of reasons for that position. We conclude, therefore, that there was reversible error of the court in the exclusion of this testimony.

The court also excluded the testimony of Bennett Brown as to what was testified to in the contempt trial by witnesses Glare, Blackwell and Gentry.   Each testified that he saw the plaintiff, Gus Galloway, in the mob on the 5th of July, as stated in the second affidavit, and that he was participating in the violent acts of the mob on that occasion.   Now, in view of the fact that plaintiff attempted to show by his evidence that he was not present on that occasion, this testimony of Glare, Blackwell and Gentry is very important and material to the defense in this case, and the exclusion of the evidence by the court was error for the same reason assigned in the case of the exclusion of the like testimony of Gus Galloway, just disposed of.

Various statements made in the depositions of Hon. John H. Rogers, judge of the federal court, who heard the contempt case, were excluded by the trial court, mostly on the ground that these statements were the mere conclusions of the judge as to the legal effect of the excluded testimony upon his mind in making up his opinion disposing of the case.   In this connection the judge's written opinion, filed in the contempt case, was excluded on the same ground.   These statements and the opinion of the judge disclose the reasons which moved him to decide the case as he did, and it appears from them that, as to the charge made in the first affidavit touching the occurrence on the 3d of July, giving the benefit of the reasonable doubt as is the rule in criminal trials, with some misgivings and doubt, the judge discharged the defendants on the ground that Evans may have had a pistol as charged against him, and that the defendants in that case may have been in the exercise of lawful duty in attempting to arrest him.   Again, as to the matters set forth in the second affidavit, which details the occurrences on the 5th of July, the evidence on the part of the defendants was to the effect that the said Gus Galloway and the other defendants therein were not present.   In other words, Galloway sought to prove an *alibi,* and the judge's testimony and opinion, sought to be introduced, tended to explain that this *alibi,* resolving all reasonable doubt in favor of the defendants, was sustained by the court. Granting, then, that the federal judge fully discharged the defendant, as shown by the exhibits to the complaint herein, nevertheless the discharge was on such grounds as to render it of little weight on the question of probable cause, because the evidence of the judge and his written opinion shows that he was hesitating as to his conclusion, and the question was only solved by applying the

rule of reasonable doubt. If this argument be correct, the judgment of the court in the contempt cases not only did not support the charge of a want of probable cause, but really and in fact showed probable cause for the prosecution. This shows the materiality of such evidence, and under the rule laid down in *Bacon* v. *Towne, supra,* it was error to exclude it.

The next question arises on the objections of the defendants to the giving of the third, sixth and seventh instructions in the shape they were given. The third instruction is as follows, to-wit: "Probable cause is defined to be such a state of facts known to and influencing the prosecutor as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably and without prejudice upon facts within the knowledge of the prosecutor, *or which he could have ascertained by reasonable diligence, which would lead him to believe or entertain a strong suspicion, supported by circumstances sufficiently strong to warrant in the mind of the prosecutor an honest belief that the person accused was guilty."*

The italicized clause is that which the defendants except to, and the same is contained in the sixth and seventh instructions, and is the subject of the same exception as in the third instruction.

The definition of probable cause in these instructions is not correct. Probable cause in criminal cases, as defined by this court, "is such a state of facts known to the prosecutor, or such information received by him from sources entitled to credit, as would induce a man of ordinary caution and prudence to believe, and did induce the prosecutor to believe, that the accused was guilty of the crime alleged, and thereby caused the prosecution. *Hitson* v. *Sims,* 69 Ark. 439, 441.

According to these instructions given, probable cause is such a state of facts known to the prosecutor, or which he could have ascertained by reasonable diligence, as would induce a man of ordinary caution and prudence to believe, and did induce the prosecutor to believe, that the accused was guilty of the crime alleged. The defect in the instruction is that it makes all the facts that could have been ascertained by the exercise of reasonable diligence as a part of the probable cause, notwithstanding there was nothing known to the prosecutor which would put a reasonable and cautious man upon inquiry as to the existence of material facts unknown to him. This is not the law. It is true that, when the facts or circumstances known to the prosecutor are of such a nature

as would put a reasonable and cautious person upon inquiry, the prosecutor will be held to have knowledge of such facts as inquiry would have disclosed, and such facts should consequently be' considered in determining whether a probable cause existed. 19 Am. & Eng. Enc. Law (2d ed.), 661, and cases cited therein.

But the instructions given ignore this doctrine, and are therefore fatally defective.

It is implied in the seventh instruction given by the trial court that the prosecutor in the former case, before the federal court, could have ascertained additional facts, that is, facts going to show that the town marshal and his posse in their encounter with Evans and Battles at the bridge on the night of the 3d of July were acting in the performance of official and public duty in this, that they were endeavoring to arrest Evans for then and there carrying a pistol, and that Evans and his friend Battles were resisting the arrest. The instruction is manifestly given on the theory that by reasonable diligence the prosecutor in the contempt case could have ascertained these facts from the marshal and probably one Willis, a bystander. The marshal and those acting with him were alleged to have been in a conspiracy to maltreat Evans because he was in the employ of the prosecutor company, and in this way what one did the other did, in furtherance of the common purpose, and all were jointly responsible for the unlawful acts of each other. This being the state of the case, it seems that it was not incumbent upon the prosecutor to go into the enemy's camp as a spy to either ascertain his defense or gain information for his own use in the contemplated prosecution. *Miller* v. *Chicago, M. & St. P. Ry. Co.,* 41 Fed. Rep. 898.

There is nothing in the evidence to show that the prosecutor in the contempt case had any information as to what the man Willis, who appears to have been the only disinterested looker on at the affair of the 3d July, knew or would testify in that trial, and nothing that made it their duty to make further inquiries. In fact, Willis' presence on the occasion seems not to have been known to the prosecution until the trial. The prosecutors therefore were under no obligation to inquire of him.

The next question for our consideration is as to the rule which protects a prosecutor from a suit for malicious prosecution when he claims and shows that he has acted on the advice of counsel in the prosecution. There is scarcely a suggestion of difference of opinion among the authorities as to what is the true rule on this

subject, and we can not do better than to reiterate the rule as defined by Judge Cooley, in his work on Torts, *183, where he says:

"It may perhaps turn out that the complainant, instead of relying upon his own judgment, has taken the advice of counsel learned in the law, and acted upon that. This should be safer and more reliable than his own judgment, not only because it is the advice of one who can view the facts calmly and dispassionately, but because he is capable of judging of the facts in their legal bearings. A prudent and cautious man is therefore expected to take such advice; and when he does so, and places all the facts before his counsel, and acts upon his opinion, proof of the fact makes out a case of probable cause, provided the disclosure appears to have been full and fair, and not to have withheld any of the material facts."

"That a prosecution was begun or a civil suit instituted under advice of counsel is frequently referred to as a complete defense to an action for malicious prosecution. This rule has been held to apply, although the facts stated to counsel did not warrant the advice given, or though the facts did not, in law, constitute a crime, or however mistaken or erroneous were the opinion expressed by the counsel and the course advised." 19 Am. & Eng. Enc. of Law (2d ed.), 685, 686.

This reasoning, we think, is sound, for in a suit for malicious prosecution the main inquiry is, did the prosecutor in the former suit or prosecution have reasonable or probable cause to prosecute or sue? The right to sue to secure a right or redress a wrong or to prosecute for the public good is not to be abridged unnecessarily, and it is only when one sues or prosecutes without reasonable cause that he can be held liable for any damage in the result of such suit or prosecution.

The evidence in this case is ample to establish the competency and standing of the counsel consulted in this matter, and, from all we can see, shows that he was furnished with all the facts in the possession of the prosecutors. The objection that he was interested as the attorney of the prosecutor, and therefore disqualified under the rule, is untenable, for any lawyer called upon to advise is the attorney for the party asking his advice.

The eighth instruction contains the objectionable feature we have disposed of in discussing the third instruction, but also contains a statement of the law which, in view of the apparent close relation between the two essential elements in the charge of malicious prosecution, malice and probable cause, should be made only

with something of an explanation; otherwise, it may mislead the jury. This part of that instruction is evidently based upon the decision of this court in *Lemay* v. *Williams,* 32 Ark. 166, and is to the effect that a prosecution on the advice of competent counsel, to whom a full, fair and honest statement of the facts in the case has been made by the prosecutor, "is evidence, but not conclusive, of a want of malice." That may be the law as to the question of malice, the less important of the two essential elements of malicious prosecution, but the rule is otherwise as to the other and more important ingredient, probable cause; for in the case of the latter such prosecution upon the advice of counsel under the circumstances supposed is conclusive of the existence of probable cause, and, this being shown, the defense is complete, and the plaintiff in the suit for malicious prosecution must lose in his suit, and this rule must not be qualified by anything said in *Lemay* v. *Williams, supra,* as to the question of malice. This part of the instruction may be harmless of itself, for proof of malice is of little or no importance where the evidence shows probable cause. The danger is in confusing the jury by such instructions, unless proper explanation be made a part of the instruction, which would confine the instruction within its narrow scope. What we have here said is applicable also to the tenth instruction.\*

In the twelfth instruction the trial court said: "If you find for the plaintiff, he is entitled to recover such damages as you think, from the evidence, will compensate him for the peril occasioned him in regard to his life and liberty, for mental strain, anxiety and injury to his feelings and his person, and for all ex-

---

\* The sixth, seventh, eighth and tenth instructions, referred to in the opinion, are as follows:

"Sixth. Upon the question, whether the defendants had probable cause for originating the prosecution, if they did so, as heretofore explained, you are instructed that the true inquiry for you to answer is not what were the actual facts as to the guilt or innocence of the plaintiff, but did the defendants, in instigating and prosecuting the charges against the plaintiff for an alleged violation of the federal injunction at the time or times mentioned in the complaint, act as an ordinarily cautious, prudent and reasonable man would have acted under like circumstances, impartially, honestly, without prejudice, upon the knowledge had and information obtained and after having exercised reasonable diligence to obtain the true facts concerning plaintiff's alleged connection with the alleged violation of the federal injunction at the times mentioned in the complaint.

"Seventh. If McCowan was marshal of the town of Huntington, and summoned plaintiff to assist him in arresting Evans and Battles for carrying concealed weapons, then the court tells you that it was the duty of plaintiff to assist McCowan in making the arrest, and if plaintiff in obedience to such summons assisted McCowan, then the

penses, if any, to which he has necessarily been subjected." There is no proof of peril of life, nor is such a thing charged in the complaint as an element of damages. One's life is not necessarily imperiled because he is incarcerated in a jail.

For the several errors named the judgment is reversed, and the cause is remanded for a new trial to be had in accordance with this opinion.

WOOD, J., concurs in the judgment.

---

court tells you this was not a violation of the federal injunction, and would not constitute probable cause for instigating a prosecution against the plaintiff, and if the defendants knew these facts, or if the defendants in the exercise of reasonable diligence could have ascertained these facts and failed to do, then your verdict should be for the plaintiff.

"Eighth. The court instructs the jury that if you find from the evidence that the defendant Kansas & Texas Coal Company acted through A. B. Brown, and that he, as the agent or superintendent of the company, made a full and complete statement of all the facts and circumstances within his knowledge, or which he could by proper and reasonable diligence have ascertained, to Joseph M. Hill, the attorney of defendant company, and that the company acted in good faith on the advice of counsel, this is evidence, but not conclusive, of a want of malice.

"Tenth. If you find from all the evidence in this action that the suit or proceeding in the federal court by the defendant company against the plaintiff, Gus Galloway, was malicious and without probable cause, notwithstanding the advice of counsel, that fact affords no protection."