REYNOLDS *v.* HOLMES.

5-2157                                           340 S. W. 2d 383

Opinion delivered November 28, 1960.

*Ras Priest,* for appellant.

*Fred M. Pickens, Jr.* and *Wayne Boyce,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant instituted suit against appellee for libel, slander, and malicious prosecution, resulting from a charge brought by appellee against appellant of petit larceny. The jury found for appellee, and judgment was entered dismissing the complaint. From such judgment, comes this appeal.

The evidence reflects that on the morning of Saturday, October 13, 1956, appellant, with her two daughters, Nadie, age 12, and Glenda, age 6, entered the Ben Franklin Store, a self-service store, located at Newport, owned and operated by appellee, and made some purchases. Four purchases were made, including a green coat sweater for the older girl, taken to the cashier's stand, and paid for. As appellant and her daughters were leaving the store, appellee, Douglas Holmes, requested that they come to the back, where he interrogated them about a red sweater being worn by the younger daughter. Mrs. Reynolds claimed she purchased the red sweater at the store on the preceding Monday, October 8th. Employees of the store were summoned, and two, Mrs. Nettie Davidson and Jerry Lynn Bradley, stated that they had seen appellant, while standing at the sweater counter, button the red sweater on the little girl. Both witnesses

stated that neither of the children was wearing, or carrying, wraps of any kind when they first observed them in the store. Martha Spears, an employee, stated that she was the cashier, and remembered a sale of a sweater to Mrs. Reynolds on Monday, but did not remember the color of the sweater. Appellant then left the store, returning with her husband, Lawrence Reynolds, and after some conversation with Holmes, the Reynolds went to the office of the sheriff for the purpose of instituting prosecution. The sheriff's office was also occupied by the police department of the City of Newport. J. R. Taylor, chief of police, heard their story, and placed a telephone call to Holmes, who came to the office. After discussing the matter, an affidavit for a warrant of arrest, charging appellant with petit larceny was prepared, and was signed by appellee. Taylor kept the written charge until Monday or Tuesday, at which time he delivered it to the municipal clerk of the City of Newport. Following the signing of the affidavit, Taylor, together with a deputy sheriff, drove appellant and her family to their home. The officer testified that appellant told him she had the tag that came off the red sweater which had been purchased on Monday, but when the tag was not produced, he returned to town. Appellant was instructed to appear in municipal court in the City of Newport on Tuesday, October 16th, but the case was not tried until December 7, 1956, at which time Mrs. Reynolds was acquitted of the charge. Three weeks later, complaint was filed against appellee seeking $10,000 actual damages for libel and slander, $10,000 actual damages for malicious prosecution, and punitive damages in the sum of $5,000, or a total amount of $25,-000. The case was tried on December 4, 1957, and resulted in a hung jury. The second trial was held on July 11, 1959, and resulted in a verdict for appellee. Numerous alleged errors are urged by appellant, and we proceed to a discussion of these points.

Appellant first asserts that the verdict of the jury amounted to a finding that appellant stole the sweater in question, and there is no substantial evidence to support such a finding. Under the court's instructions, it would

appear that the jury may have taken such a view. Of course, we have no way of knowing the factual basis upon which the jury reached its conclusions. The fact that she had been acquitted of the charge in criminal court, did not necessarily preclude the civil jury from reaching an opposite conclusion. It must likewise be remembered that a criminal conviction requires proof of guilt beyond a reasonable doubt, while an action for damages only requires a preponderance of the evidence; here, on appeal, we are only concerned with whether there was substantial evidence to support the verdict. Proof offered by appellee included the testimony of the two ladies, heretofore mentioned, that they had observed Mrs. Reynolds buttoning the red sweater on the little girl; that she was in the store for an hour and a half to two hours; that the little girls were neither wearing sweaters, nor carrying sweaters, when first observed in the store, and a price tag was found by one of the employees on the floor near the sweater counter. Admittedly, the red sweater was not paid for on October 13th. Holmes also testified that he watched the mother and two daughters in the store for approximately thirty minutes, and neither of the children had any kind of wrap. Appellant denied taking the sweater, and testified that the red sweater had been purchased on the previous Monday; however, another employee of the store (Mrs. Warren) testified that the sweater purchased at that time was blue. The price tag found was for a size 8 sweater, and the record reflects that, following the filing of the charge of petit larceny against Mrs. Reynolds, a friend of appellant, Sarah Miller, purchased a size 8 sweater from the Ben Franklin Store, for the purpose of showing that that size sweater was too large for the child to wear. Mrs. Miller testified that the size 8 sweater purchased "* * * come way down on her". The witness also testified that she had observed Glenda wearing a red sweater on Tuesday before the alleged theft on Saturday. Lawrence Reynolds, husband of appellant, Billy Reynolds, son of appellant, and Nadie Reynolds, daughter, also testified that the red sweater was purchased on the Monday prior to the accusation, and had

been worn for several days during the week. Appellant points out that certain evidence offered by appellee was contradictory—but the jury heard each witness, and was in a position to evaluate the testimony; also, appellant urges that no asportation was proved, *i.e.*, no one actually saw Mrs. Reynolds take the sweater from the counter. No citation of authority is required to the effect that circumstantial evidence is entirely competent and affords a valid basis upon which to render a verdict. As this Court has many times stated, it is within the province of the jury to believe or disbelieve witnesses, and weigh the facts and circumstances. Though appellant's evidence, if accepted by the jury, would likely have supported a verdict, we are likewise of the opinion that appellee offered evidence of a substantial nature upon which the jury could properly base its verdict.

Error is claimed because of the refusal of the court to permit appellant to testify on direct examination about a question asked Holmes at the criminal trial by the presiding judge, Vernon Ridley, and to relate the answer given by appellee. Appellant states that this evidence was competent to show Holmes was guilty of express malice in the prosecution, and that he attempted to obtain a conviction by giving false testimony. Upon refusal of the court to permit the evidence, counsel for appellant stated:

"Note our exceptions, and the witness, if permitted to answer would have stated that at the conclusion of the argument Judge Ridley hesitated, then said, 'I know this is unusual, but I want to ask Mr. Holmes a question and I am going to ask it; Mr. Holmes, did you see Mrs. Reynolds and the two little girls enter the store?' His answer was, 'No, sir, I did not know about it until it was reported to me.' "[1]

---

[1] Lawrence Reynolds, husband of appellant, testified that this question was asked by the Judge, and the answer given by Holmes. The parties stipulated that Judge Vernon Ridley, if present, would testify that he did not recall the details of the testimony.

In the first place, we do not see how the refusal to admit this evidence was prejudicial to the cause of appellant. Mrs. Reynolds had just testified that Mr. Holmes stated in the criminal trial that he saw her and the children when they first came in, and they were not wearing wraps. According to appellant's brief, in the previous civil trial, Mr. Holmes had stated, in effect, that he did not see the family when they first came in, and this evidence was evidently desired by appellant in contemplation that appellee would testify in a like manner. In fact, when Holmes subsequently took the stand, he did state that he did not recall when he first saw the family. Appellant contends that the desired evidence "* * * went to the very heart of the principal issue: Who was lying? Who started off lying? Can there be absence of express malice when the prosecution attempts to obtain conviction by false testimony?" As stated, the jury heard Mrs. Reynolds relate the version given by Holmes at the criminal trial. Subsequently, in the case now before us, Holmes testified that he did not know when he first observed appellant and her daughters. Accordingly, before submission, the jury was well aware of the fact that Holmes had, according to appellant, made contradictory statements. Therefore, if the testimony was relevant, Mrs. Reynolds was not prejudiced, for the damaging part of Holmes' alleged evidence before the municipal court was admitted, and the alleged conflict in his testimony was brought to the attention of the jury. It would seem that the only fact that could have been shown by this evidence was that Holmes gave two versions in the criminal trial, which was entirely collateral to the matter at hand. At any rate, we do not consider the evidence relating to whether Holmes observed appellant coming into the store as being material. Coming into the store did not directly relate to the stealing, nor did it tend to show lack of probable cause, since the charge against her was based, not upon her coming into the store, but upon observation of her actions after she arrived; malice is not shown by proving inconsistent statements regarding immaterial matters. We find no merit in this contention.

It is next contended that the court erred in permitting witnesses to testify, over objections of appellant, that they had suspected appellant of shoplifting. There are divergent views as to whether testimony, wherein witnesses state inferences or opinions, formed as a result of their observations, is admissible.[2] Here, there is no necessity for discussion of this question, for this point can be disposed of without such a determination. Jerry Lynn Bradley testified that appellant was in the store for close to two hours, and that she watched her. When interrogated as to why she watched her, she replied:

"A. Because we had suspicioned her before. She was looking around, and when you ask a customer, and they are looking, and that was such a period of time, that gives you, as a sales clerk, room for suspicion.

Q. How long did you watch her, Jerry Lynn?"

At this point, counsel for appellant objected, stating that "suspicion is a conclusion drawn by the witnesses and not based upon any facts that are in evidence. We think it is prejudicial, immaterial, and it is inadmissible." The court overruled the objection. Subsequently, Mrs. Dorothy Warren was asked why she noticed appellant, and the witness likewise replied, "Because we had suspected her of shoplifting, and we had been watching her." The witness further testified with reference to two dresses, which had been tried on by the daughters of Mrs. Reynolds on a previous date when appellant was present, and which, according to her testimony, subsequently "disappeared". This testimony was objected to, and the objection at first overruled. Within a few minutes, however, the court ordered all the testimony about the dresses stricken from the record, told the jury that such evidence was being withdrawn from its consideration, and instructed the jury specifically to not consider the testi-

[2] For instance, in Corpus Juris Secundum, Vol. 32, § 459, p. 101, we find: "The modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness is permitted to state a fact known to or observed by him, even though his statement involves a certain element of inference."

mony in any manner. "You must treat it as though this testimony had never been introduced during this trial." Shortly thereafter, after proceedings in chambers, and at the request of appellant, the court instructed the jury to disregard the answer of the witness, "* * * because we suspected her of shoplifting, and we had been watching her." The court further stated: "You are instructed you are to disregard that testimony and give it no consideration; that you are to treat it as though you never heard it because it, too, is being stricken from the record and you are specifically and cautiously instructed to use care and caution and to wipe it completely out of your mind." It does not appear from the record that the court specifically told the jury to disregard the similar statement made by the first witness, Jerry Lynn Bradley, though there is an inference during the examination of Holmes that all of this testimony had been excluded. Holmes, the last witness on behalf of appellee, was asked:

"Q. What was the first thing that called her to your attention?

A. Well, it has been brought out in testimony we had suspected her before.

BY MR. ERWIN:

If Your Honor please, it is not brought out in testimony; *it was excluded from the consideration of the jury.*[3]

BY THE COURT:

Sustained."

At any rate, it was apparent that the court had changed its mind since first admitting this evidence, and if appellant desired that the specific statement of Miss Bradley be stricken, she should have made such a request to the court. However, appellant's principal argument on this point is not directed to the fact that the Bradley testimony was not specifically excluded, but rather to the fact that the court's admonition to disregard the

---

[3] Emphasis supplied.

testimony "* * * did not remove and could not remove prejudice created in the minds of the jury." This contention relates principally to the testimony of Mrs. Warren. In *Horton, Guardian* v. *Smith,* 219 Ark. 918, 245 S. W. 2d 386, a witness was asked whether one Charles Sherman "* * * is a careful or reckless driver? A. I know that he is a reckless driver." On appeal, this Court said:

"The first assignment in the motion for new trial is that the court erred in permitting appellee to answer the question, in refusing to exclude the answer, and in failing to instruct the jury not to consider it. The record reflects an objection by appellant after the question was answered. In sustaining appellant's objection, the trial court said: 'Yes, gentlemen, that is incompetent, and you will not consider the last answer of the witness. It is taken from you.' There was no further objection nor was a mistrial requested. In these circumstances, any prejudice arising from the excluded testimony was removed by the action of the trial court."

Here, the court went even further, and made a rather lengthy statement admonishing the jury that the evidence should not be considered. If it were felt that the court's statement to the jury would not remove any possible prejudice, a motion for mistrial should have been made in the first instance. This was not done.

Holmes testified, from his own knowledge, that his annual average loss from shoplifting was $2,000. This evidence was based upon records in appellee's possession. Appellant states that this evidence was immaterial and irrelevant, but highly prejudicial. We think the evidence was competent to show appellee's state of mind, and probable cause for instituting the criminal action, as well as tending to show a lack of malice. Of course, one who had suffered losses from theft would be much more concerned than one who had not. As stated in *Richter* v. *Neilson,* 11 Cal. App. 2d 503, 54 Pac. 2d 54:

"As the authorities point out, malice being the main indispensable element of an action of this kind, not only

is a plaintiff given a very wide range in proving facts and circumstances tending to establish such element, but likewise the defendant is given the same full opportunity to disprove it. 16 Cal. Jur. 748. As said in *Griswold* v. *Griswold, supra,* and again in *Burke* v. *Watts,* 188 Cal. 118, 204 P. 578, whatever tends to prove good faith tends to disprove malice and must be admitted.''

Nor are we able to see where this testimony was prejudicial, since there was no evidence submitted to the jury to connect appellant with the $2,000 loss.

Appellant complains that the size 8 pin tag found on the floor near the sweater counter was never offered in evidence, and she calls attention to the fact that though Martha Spears and Gene Warren testified about the finding of the tag, neither Jerry Lynn Bradley nor Holmes were asked any questions with reference to it. Of course, there was nothing to prevent appellant from interrogating Miss Bradley, Holmes, or any other witness at length with reference to the tag, or why it was not introduced. In addition, no objection was made to the evidence of witnesses Spears and Warren concerning the tag.

Appellant alleges error in the refusal of the court to permit the clerk to read to the jury the pre-trial order made by the court following a pre-trial conference on November 29, 1957. This request was based on the fact that the original answer of appellee stated that the prosecution was instituted in good faith upon the advice of the deputy prosecuting attorney of Jackson County; at the pre-trial conference appellee obtained leave to amend his answer so as to allege that he consulted Taylor, the chief of police, and had acted upon the advice of Taylor in commencing the prosecution. Appellant desired to introduce the order as indicating ''ever-shifting'' defenses of Holmes. The statute relating to pre-trial conferences (Ark. Stats., § 27-2402, 1959 Supp.) provides:

''Actions taken at the conference, amendments allowed to the pleadings, rulings of the court, stipulations to be considered in evidence, and, agreements made by

the parties on any of the matters considered, will be made a part of the record in the case."

Though the pre-trial order is a part of the record, we think this point is immaterial. The original answer was read to the jury. While the testimony of Holmes reflected that some discussion was held with the chief of police, no mention was ever made by appellee that he consulted the deputy prosecuting attorney. Appellee also admitted on cross-examination that at the previous trial, he had testified the charge had been filed at the suggestion of Taylor. Accordingly, this conflict was called to the attention of the jury, and no prejudice could have resulted from the court's ruling.

Appellant complains about the giving of the court's instruction No. 6 and the failure to give appellant's requested instruction No. 20. As to the first, there was no objection to the instruction; as to the second, the contents of the requested instruction were covered by other instructions given.

Finally, it is urged that the court erred in not excusing venireman David Paul Burton for cause. Burton stated on *voir dire* that he had heard about the occurrence at the Ben Franklin Store through relatives of appellee, and had formed an opinion; the relatives were not witnesses. However, he said that he had no bias, and in response to interrogation by the court, stated that he could go into the jury box, lay aside any opinion, and base his decision solely on the evidence introduced during the trial, and the law as given by the court. We have several times held that the facts relied upon by appellant are not sufficient grounds for challenge. See *St. Louis I. M. & S. Ry. Co.* v. *Stamps*, 84 Ark. 241, 104 S. W. 1114, *Rowe* v. *State*, 224 Ark. 671, 275 S. W. 2d 887.

Finding no reversible error, the judgment is affirmed.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, dissenting. This is an appeal from a judgment in favor of appellee, Douglas

P. Holmes, based upon a verdict of a jury, in an action brought by appellant, Inez Reynolds, for libel, slander, and malicious prosecution.

On the morning of Saturday, October 13, 1956, appellant, Inez Reynolds, with her two daughters, Nadie, age 12, and Glenda, age 6, entered the Ben Franklin Store, a self-service store, at Newport, which was owned and operated by appellee, Douglas P. Holmes, to make some purchases. She and the children selected four purchases, including a green coat sweater for the older child, carried them in a basket to the cashier's stand, paid for them, and were leaving the store when she was stopped by appellee, conducted to a room at the rear of the store, and accused by him of having stolen a red sweater then worn by her youngest daughter, Glenda. She protested that she had bought the red sweater in question at the store the preceding Monday, October 8. Appellee summoned three employees, Henry Burge, Mrs. Nettie Davidson, and Jerry Lynn Bradley, who told him in appellant's presence that they had seen her put the red sweater on the smaller girl. She repeated that she had bought the sweater on the preceding Monday and requested that he summon the cashier as a witness. The cashier, Martha Spears, was summoned by the appellee, and questioned. Appellant was then dismissed. She left the store and returned with her husband, Lawrence Reynolds, in 15 or 20 minutes. Mr. Reynolds confronted appellee and demanded to know whether the red sweater worn by the little girl was the sweater his wife was accused of stealing. Appellee responded in the affirmative.

Appellant and her husband went immediately to the office of the sheriff for the purpose of attempting to prosecute appellee. The sheriff's office was then occupied by the police department of the City of Newport. A radio operator and a deputy sheriff, John Mitchell, were present and appellant and her husband were directed to wait for the return of the Chief of Police. When Chief of Police, J. R. Taylor came in, he heard their story, took the paper bag containing their purchases, took them into the sheriff's private office and placed a telephone call

to Mr. Holmes who came to the office. After a discussion of the matter, Mr. Holmes and Chief Taylor went out into the main office, filled out a blank form affidavit for a warrant of arrest charging appellant with petit larceny. This charge was signed by appellee at the time and delivered to the Chief of Police. Chief Taylor kept the written charge until Monday or Tuesday following at which time he delivered it to Vaughan Jackson, the Clerk of the Municipal Court of the City of Newport. On Tuesday morning, October 16, 1956, the clerk presented the signed form to appellee at his office for verification.

After appellee signed the form in the sheriff's office, Chief Taylor and John Mitchell, the deputy sheriff, drove appellant and her family home to Jacksonport. By invitation the two officers inspected the clothing of the children in their home.

After having inspected the clothing of appellant's children on the Saturday afternoon in question, Chief Taylor instructed appellant to appear in the Municipal Court in the City of Newport at 1:30 p.m., on Tuesday, October 16, 1956. Appellant appeared as instructed with her witnesses and her attorney for trial. She was not tried until December 7, 1956, at which time she was acquitted of the charge against her.

On December 28, 1956, twenty-one days after her acquittal, appellant filed her complaint against appellee for slander, for libel, and for malicious prosecution. The case was tried December 4, 1957, and resulted in a hung jury. The case was retried on July 11, 1959, and the jury returned a verdict for the defendant. Judgment was rendered accordingly; notice of appeal was given in apt time; and the case is now before this Court.

For reversal, appellant relies upon a number of points. No useful purpose would be served by discussing any except the following on which my dissent is based.

Appellant contends that the court erred in refusing to permit appellant, Inez Reynolds, to testify that at her trial in Municipal Court, Judge Ridley, after hearing the

evidence and the argument of counsel for the prosecution (her attorney made no argument), asked appellee Holmes a question, what the question was, and what his answer was.

The following appears in the record relative to appellant's testimony in her case in chief:

"Douglas testified against me. He said he saw me when we first came in and we didn't have no wraps on, and I had a shopping bag. I said none of us did. I had on a blue short coat. My youngest daughter had on the red sweater. Nady didn't have on a sweater because she didn't have no sweater.

"He testified that when he called Martha Spears back there, she admitted selling me a sweater, but said it was a blue one.

"Jerry Lynn Bradley testified that Martha said she sold me a sweater, but it was a blue one. She said she saw us when we came in and my girls didn't have on anything; no wraps. Mrs. Davidson testified. She said she saw us come in and we didn't have on any wraps. She also said that Martha said she sold me a sweater but she said it was a blue one."

"Q. Did the court ask Douglas Holmes a question after the argument?

"A. Yes, sir.

"Q. What was the question?

"By Mr. Pickens: Object for the reason that whatever the Court might have said to Douglas Holmes at the time is not proper in this lawsuit. We are getting three different litigations mixed up as a result of Mr. Priest's question and it is irrelevant.

"By the Court: What was the question?

"By Mr. Priest: I asked her what question Judge Ridley asked Douglas Holmes and what his answer was.

"By the Court: Objection sustained, go ahead.

"By Mr. Priest: Note our exceptions; and the witness, if permitted to answer would have stated that at the conclusion of the argument Judge Ridley hesitated, then said, 'I know this is unusual but I want to ask Mr. Holmes a question and I am going to ask it; Mr. Holmes, did you see Mrs. Reynolds and the two little girls enter the store?" His answer was: 'No, sir, I did not know about it until it was reported to me'."

In the case at bar appellee testified concerning the subject matter contained in appellant's testimony, as set out above, as follows:

"Q. Why did you send after Miss Jerry Bradley?

"A. *I wanted to confirm what I had seen myself.*

"Q. When you first saw them, did either of the children have any kind of wrap on?

"A. Neither one.

"Q. I believe you testified it was approximately 30 minutes you watched them?

"A. That's right.

"Q. When Jerry Lynn came back, what took place?

"A. I asked her if the little girl had a sweater on when they came in and she said, 'No, neither one had anything on'."

Appellant argues that the excluded testimony was offered for two purposes:

"A. To show that Douglas Holmes acted with express malice in instituting the criminal prosecution against appellant on a charge of petit larceny by showing that he tried to bring about her conviction by giving against her, and by causing his employees to give against her, testimony which he admitted to be false.

"B. To show that the testimony which she knew, from having heard it at a previous trial, would be given by appellee and his employees, Jerry Lynn Bradley and Mrs. Nettie Davidson, was fabricated and false, and was

merely a substitute for their original testimony in the Municipal Court, which Mr. Holmes had admitted to Judge Ridley was false.''

The question here presented is whether appellant should have been permitted to testify in her malicious prosecution action as to what was said by appellee in the criminal case before the Municipal Court. The issue involved in the exclusion of the testimony referred to is whether or not Mr. Holmes' prosecution in the criminal case was in good or bad faith, *i.e.*, whether or not he had probable cause to commence the action. In discussing this identical question, this Court in *Kansas & Texas Coal Company* v. *Galloway,* 71 Ark. 351, 74 S. W. 521, after discussing the general rule of admissibility, had this to say:

''. . . malicious prosecutions forms an exception to the rule. . . .

''. . . Probable cause is such a state of facts in the minds of the prosecutor as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty. The facts testified to on the examination may have been very influential in raising such suspicion or belief, and are therefore competent evidence to show the ground he had of cause to believe, whether they were true or not. They are therefore facts material to the issue, to be proved by any witnesses who can testify to them, as well as by those who testified at the examination. These witnesses may be dead, absent or insane; they may have forgotten them, or refuse to testify to them, or even deny them; it is not the less true that they did so testify, and if the testimony was of a character to evidence a belief or strong suspicion, in the mind of a reasonable man, of the guilt of the accused of the crime charged, they had a direct bearing on the issue of probable cause or not, in the action for malicious prosecution. . . .''
From what has been said above, I cannot escape the conclusion that the trial court erred in excluding the ques-

tioned testimony. See *Hall* v. *Adams,* 128 Ark. 116, 193 S. W. 520.

I now reach the question, was such error in this case reversible? Appellee argues that: "Appellant has no grounds for complaint. For in fact, the jury was permitted to hear this testimony in the testimony of Lawrence Reynolds. Reynolds testified in almost exactly the words of the offer of proof made at the time that the testimony was excluded when Inez Reynolds was on the stand. The appellee feels that it is at least highly questionable that the question of an examining magistrate was admissible the first time, but certainly by no stretch of the imagination can the appellant contend that she was prejudiced because she was not permitted to put the same testimony into the record twice. To have permitted both Inez Reynolds and Lawrence Reynolds to have testified to the same identical question and answer would simply be repetitive and cumulative and would serve no useful purpose."

The general rule is that prejudice is presumed from the exclusion of competent and material evidence; 3 Am. Jur. § 940, p. 504. In the same volume on the same subject, at page 589, § 1032, we find:

"The general principle has been laid down that where the facts of the case are such that the appellate court cannot say that if the evidence erroneously excluded had been admitted, the jury would have returned the same verdict, the exclusion of such evidence will be held to be reversible error. If the erroneous exclusion injuriously affects a substantial right, then there is reversible error. It is generally held to affect a substantial right if it relates to a material point."

To the contention of appellee that the error was cured by the testimony of Lawrence Reynolds, to the same effect we find in the case of *McDonough* v. *Williams,* 86 Ark. 600, 112 S. W. 164, the following:

"While there was evidence to the same effect admitted, the jury did not accept it. We cannot say that

this evidence was cumulative. The witnesses were not sufficiently numerous for that, and, if the jury had been given the opportunity to consider the testimony of Spradlin, they might have given it more weight than the other testimony that was adduced to the same effect."

The testimony which was excluded was an admission against interest because when Holmes admitted in Municipal Court that he didn't see them enter the store, after having previously testified that he did see them enter the store, it was more than impeachment because in showing that he swore falsely in Municipal Court indicates that he maliciously instituted the prosecution in that court. Whether he saw them enter the store was material because that was one factor in determining his good faith in starting a prosecution on something someone else told him rather than on personal knowledge. See: *Thiel* v. *Dove*, 229 Ark. 601, 317 S. W. 2d 121; *Hall* v. *Adams, supra;* and *Kansas, Texas Coal Co.* v. *Galloway, supra.*

Following the rule set out above, it is my conclusion that the error as indicated is reversible and for this reason I respectfully dissent to the majority opinion.