(No. 11502.—Judgment affirmed.)
John M. Glenn, Appellant, *vs.* Andrew M. Lawrence *et al.* Appellees.

*Opinion filed October 23, 1917—Rehearing denied Dec. 6, 1917.*

1. Malicious prosecution—*how malice may be proved.* While malice, as an element of malicious prosecution, does not necessarily mean personal ill-will, spite or hatred towards the person prosecuted and may be proved by showing that the prosecutor was actuated by improper motives, yet ill-will, spite or hatred constitutes express malice and may be proved both to sustain the action and for the recovery of exemplary damages.

2. Same—*proof of element of want of probable cause is essential.* Proof of the element of want of probable cause is essential to the sustaining of an action for malicious prosecution notwithstanding malice and all the other elements are proven, as want of probable cause cannot be inferred from malice and both malice and want of probable cause must be proved.

3. Same—*general rule as to what is probable cause.* Probable cause is a belief held in good faith by the prosecutor in the guilt of the person prosecuted, based on circumstances sufficiently strong to induce a belief in the mind of a reasonably cautious person that the person prosecuted is guilty of the particular offense charged.

4. Same—*what does not show a want of probable cause.* The dismissal by the State's attorney, at the instance of plaintiff's attorney, of an information for criminal libel in the municipal court when there was an opportunity to try the defendant, the institution of a second proceeding in the criminal court of Cook county for the same alleged libel, the action of the grand jury in finding "not a true bill," and the dismissal of the complaint by the criminal court, do not show want of probable cause for the prosecution.

5. Same—*when the plaintiff must be held to have had probable cause.* Where the plaintiff in an action for criminal libel sets out the alleged libel in his complaint, together with all the facts in detail, and such complaint is examined by the judge and indorsed by him with the statement that he is satisfied there is probable

cause for filing the complaint, the plaintiff must be held to have had probable cause the same as though he had acted on the advice of counsel.

6. SAME—*when rule that every person is presumed to know the law has no application.* The rule that every person is presumed to know the law is neither necessary nor applicable in an action for malicious prosecution, and it is a complete defense to show that the defendant to such action, after a full, fair and truthful statement of the facts within his knowledge, was advised by counsel that there was probable cause for a criminal prosecution and that he acted on such advice in making his complaint.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding.

ZANE, MORSE & McKINNEY, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, (LEVY MAYER, and ALFRED S. AUSTRIAN, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This action of trespass on the case for malicious prosecution of the appellant, John M. Glenn, by the appellees, Andrew M. Lawrence and Roy D. Keehn, on a charge of criminal libel based on two publications in *The Manufacturers' News,* a newspaper published by the appellant, was brought in the superior court of Cook county. The plea was the general issue, and on a trial the court, at the conclusion of the evidence offered by plaintiff, directed a verdict of not guilty, and judgment was entered accordingly. The Appellate Court for the First District affirmed the judgment on appeal, and this further appeal was prosecuted.

The facts proved upon which the verdict was directed are as follows: On February 14, 1913, the senate of this State passed a resolution directing the appointment of a committee, of which Barratt O'Hara, Lieutenant-Governor,

was to be president, to investigate, and to report to that or the succeeding senate, the workings of the existing statutes dealing with the subject of the white slave traffic. The committee held sessions and examined witnesses in Chicago. The plaintiff was the publisher of a newspaper called *The Manufacturers' News,* published in that city, and on March 6, 1913, it contained the following: "Lieutenant-Governor Barratt O'Hara, chairman of the so-called 'white slave commission,' was for a number of years connected with *The Chicago Examiner.* He now enjoys the fullest confidence of Andrew Lawrence, representative of the Hearst papers in Chicago. It is our judgment that this investigation would not be nearly so vigorous if the State street merchants would furnish the Hearst papers with a sufficient amount of full-page advertising to satisfy the greed of Mr. Lawrence." This was followed by a quotation from a book written by Jane Addams and criticisms of the alleged theory of the commission that the evil was due to low wages, and allegations that the committee apparently had in view the establishment of a minimum wage for women. On March 13, 1913, the plaintiff published in his newspaper another article concerning a meeting of the committee to which the plaintiff was brought and questioned as to the foundation of his former statement as to the connection between O'Hara and Lawrence. That article contained the following: "During the examination Lieutenant-Governor O'Hara was repeatedly prompted by M. B. Coan, who was immediately behind him and part of the time stood up so he could better say to Mr. O'Hara what he desired. Every person in the room had as good an opportunity to observe what was taking place between Mr. O'Hara and Mr. Coan as the witness. Many of the members of the General Assembly and many of the newspaper men present know Mr. Coan personally and know whether he has relations with Andrew Lawrence and the Hearst papers or not." This was followed by inquiries whether it was not well known

that Coan was the personal representative of Andrew Law-
rence and reported to him and how it had happened that
Coan was appointed investigator of the commission. On
March 14, 1913, the defendant Andrew M. Lawrence sub-
scribed and swore to a criminal complaint, which was pre-
sented to a judge of the municipal court of Chicago, set-
ting forth *in hæc verba* the publication of March 6, 1913,
and alleging that it was a libel upon Andrew.M. Lawrence
and Barratt O'Hara, and praying for a warrant against the
plaintiff, John M. Glenn, and Glenn & Co., a corporation.
The judge indorsed upon the complaint the following: "I
have examined the within information and the informant
and am satisfied that there is probable cause for filing the
same. Leave is hereby given to file it, and it is ordered
that an *instanter capias* be issued against the defendant,
bail fixed at $2000." The plaintiff was arrested and taken,
in the custody of two officers, to detective headquarters and
from thence to the court room of the chief justice of the
municipal court, and there gave bail in the sum of $2000.
There were several continuances, and the matter finally
came on for hearing. The municipal court having jurisdic-
tion to try the plaintiff for the alleged offense, the chief
justice proposed to try the case as upon an information.
An assistant State's attorney appeared, and, on the ex-
pressed wish of the defendant Roy D. Keehn to get out of
the court, made a motion to dismiss the prosecution, which
was done and the plaintiff was discharged. That was on
April 2, 1913, and the defendants, Lawrence and Keehn,
then went before a judge of the criminal court of Cook
county having jurisdiction to hold the plaintiff to the grand
jury and filed a like complaint, signed and sworn to by the
defendant Lawrence, charging the plaintiff with a criminal
libel in the publication of March 6, 1913, and the judge
ordered a warrant issued. Lawrence also made a similar
complaint charging a libel by both publications of March
6 and 13. There was some uncertainty in the evidence

whether the second complaint was signed and sworn to. The plaintiff appeared the next day before the judge of the criminal court, waived service and was released on bail. While the matter was pending before the judge of the criminal court the State's attorney presented to the grand jury a charge against the plaintiff based upon the publication, but the grand jury made a return of "not a true bill." The complaints were thereupon dismissed by the judge of the criminal court, upon motion of the plaintiff, for want of prosecution, the State's attorney agreeing to the motion.

The facts which will sustain an action for malicious prosecution are (1) the commencement or continuance of an original, criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff. (26 Cyc. 8.) The plaintiff proved at the trial the first, second, third, fifth and sixth elements of a good cause of action against the defendant Lawrence but proved nothing against the defendant Keehn except that he acted as attorney for Lawrence. The evidence showed the commencement of the prosecutions against the plaintiff; that the prosecutions, both in the municipal court and before the judge of the criminal court, were instituted by the defendant Lawrence; that the first prosecution was dismissed by the State's attorney at the instance of Keehn, acting for the defendant Lawrence, and the second prosecution was dismissed after the grand jury ignored the charge; that the defendant Lawrence was actuated by malice, and that the plaintiff suffered damage by his arrest and detention and the making and publication of the criminal charge.

On the trial the plaintiff offered to prove, as evidence of actual malice, that instead of taking him into the mu-

nicipal court, where the warrant was returnable, he was taken to the headquarters of the Chicago department of detectives; that on the street a photograph of him, accompanied by an officer, was taken and was published in *The Chicago Examiner,* published by the company of which Lawrence was president and general manager; that the picture in the paper was accompanied by a heading, in large letters, "John M. Glenn arrested.—Criminal libel.—Freed on $2000 bail;" that the picture occupied the width of two columns, with the words in italics, "The arrest of John M. Glenn.—Snapshot of Glenn (at the right) in custody of a city detective after his arrest yesterday on two charges of criminal libel in connection with the Illinois senate committee's white slave investigation, for which he was publicly rebuked by Chairman O'Hara." Below the picture was the sub-heading, "A. M. Lawrence swears out two warrants for publishers of *The Manufacturers' News,*" and other details concerning the prosecutions. It is assigned for error that the court refused to admit this evidence and that the refusal was error.

Malice, as an element of malicious prosecution, does not necessarily mean personal ill-will, spite or hatred toward the person prosecuted, but is proved by showing that the prosecutor was actuated by improper motives; (*Harpham v. Whitney,* 77 Ill. 32;) yet such ill-will, spite or hatred constitutes express malice, and may be proved both to sustain the action and for the recovery of exemplary damages. The evidence of the taking and publication of the photograph tended to show that Lawrence was actuated by malevolence and vindictiveness toward the plaintiff, and the plaintiff had a right to make the proof. There was, however, ample evidence of actual malice aside from that offered to show the indignities toward the plaintiff. The dismissal of the complaint in the municipal court to prevent the chief justice from trying the case on the merits and going to the criminal court, where there could be no trial

but only a holding of the plaintiff to bail, was sufficient to show a motive other than that of bringing a guilty party to justice, which is malice as a matter of law, (*Krug* v. *Ward*, 77 Ill. 603,) and showed an actual intent to injure the plaintiff. Notwithstanding that error, if there was an entire failure to prove the fourth of the elements above mentioned, which is the absence of probable cause for the prosecution, the direction of the court was not error. If malice and want of probable cause do not concur the action cannot be maintained, and it was for the plaintiff to show that there was not probable cause nor reasonable ground for the prosecution. (*Israel* v. *Brooks*, 23 Ill. 575.) "Probable cause" was defined in *Harpham* v. *Whitney, supra,* as such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or to entertain an honest and strong suspicion that the person arrested is guilty. Substantially the same definition was given in *Ross & Co.* v. *Innis*, 35 Ill. 487, and *McDavid* v. *Blevins*, 85 id. 238. It is a belief held in good faith by the prosecutor in the guilt of the accused, based upon circumstances sufficiently strong to induce the belief in the mind of a reasonably cautious person that the defendant in the prosecution was guilty of the particular offense charged. The proof of a want of probable cause must necessarily be of a negative character, and slight evidence, such as, in the absence of proof by the defendant to the contrary, would afford ground for an inference that there was a want of probable cause, is usually sufficient. (*Israel* v. *Brooks, supra; Brown* v. *Smith*, 83 Ill. 291.) The existence of malice on the part of Lawrence did not tend to prove a want of probable cause, which cannot be inferred from malice. *McElroy* v. *Catholic Press Co.* 254 Ill. 290.

It is urged that the dismissal by the State's attorney, at the instance of Keehn, of the prosecution in the municipal court when there was an opportunity to try the plaintiff upon the complaint, the institution of the second proceed-

ing in the criminal court, and the action of the grand jury, constituted proof of a want of probable cause. But the rule of this court is that the discharge of the accused by the examining magistrate is not evidence of a want of probable cause, (*Israel* v. *Brooks, supra; Thorpe* v. *Balliett,* 25 Ill. 339;) and the ignoring of the charge by the grand jury would not raise an inference that Lawrence did not honestly believe that the publications made by the plaintiff constituted a criminal libel.

On the question whether the publications constituted a libel it is insisted that they did not, and therefore the criminal complaint stated no offense and a *prima facie* showing of want of probable cause was established which required submission of the question to the jury. Each complaint contained the publication alleged to constitute the libel, together with the resolution of the senate, the appointment of a committee and the hearing of witnesses. The complaints were therefore recitals of facts which were alleged to constitute the criminal offense, and were not mere charges of the commission of the offense based upon facts known to Lawrence and not disclosed. They presented to the judges an exact statement from which the judges could determine whether a criminal act had been committed. The judge of the municipal court, upon examination of the complaint, indorsed upon it his statement that he had examined the information and the informant and was satisfied that there was probable cause for filing the complaint. The judge of the criminal court likewise, upon examining the complaint, deemed it sufficient and ordered a warrant. Lawrence could only be held to have acted without probable cause if the language of the publications was not libelous in law and if he was conclusively presumed to know the law. O'Hara was not performing any function as Lieutenant-Governor but was acting as a member of a committee, and whether the publications were legitimate expressions of judgment as to his conduct as a member of the committee or were a

criminal libel was a question of law. It is a rule that every person must regulate his conduct according to the law, and to make that rule effective he must be presumed to know the law. Such a presumption is necessary to the proper administration of justice in order that alleged ignorance of the law will not give immunity from punishment. But that rule is neither necessary nor applicable to a suit for malicious prosecution. On the contrary, the prosecutor may act upon the judgment of reputable counsel, and if he makes a full, fair and truthful statement of the facts within his knowledge and such counsel advises him that there is probable cause for a criminal prosecution, such advice constitutes a complete and absolute defense. (*Wicker* v. *Hotchkiss*, 62 Ill. 107; *Anderson* v. *Friend*, 71 id. 475.) The complaints were submitted to judges of courts of record upon the facts therein stated and were deemed by such judges to show the commission of the offense of criminal libel by the plaintiff. The ordinary complaint that a criminal offense has been committed merely charges its commission substantially in the language of the statute creating the offense, and whether facts known to the defendant constitute probable cause is a subject of proof in a suit for malicious prosecution, but in this case, although it does not appear that the facts were stated to counsel and advice taken, they were stated in detail in the complaints and submitted to the judges for their decision whether they constituted probable cause. Surely the same rule ought to apply as where the facts are fully and truthfully stated to reputable counsel. Lawrence could not be held responsible for their judgment on the question of law, whether correct or incorrect.

The superior court did not err in directing a verdict of not guilty, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*