[Civil No. 1867. Filed April 22, 1922.]

[206 Pac. 166.]

# W. E. CONARD, Appellant, v. C. D. DILLINGHAM, Appellee.

1. TRIAL—INSTRUCTION REQUIRING PROOF DEFENDANT MADE STATEMENT HELD NOT TO EXCLUDE OTHER ISSUES.—In an action for slander, an instruction that, before plaintiff was entitled to a verdict, he must prove by a preponderance of the evidence that defendant made the alleged statement, was not erroneous as indicating that that question was the only fact to be considered by the jury, especially in view of other instructions relating to other facts.

2. LIBEL AND SLANDER—INSTRUCTIONS TO FIND FOR PLAINTIFF IF DEFENDANT SPOKE WORDS ALLEGED, AND THEY WERE UNTRUE, HELD CORRECT—PLAINTIFF ENTITLED TO NOMINAL DAMAGES IF CHARGE OF THEFT WAS FALSE.—Where the alleged slanderous statement charged plaintiff with larceny of an automobile truck, instructions that those words were slanderous in their nature, and, if they were spoken of plaintiff by defendant, the plaintiff could recover unless the jury found from the preponderance of the evidence that the charge was true, were correct, where there was no claim of even qualified privilege, since the plaintiff would be entitled at least to nominal damages if the words were spoken and were false.

3. LIBEL AND SLANDER—DEFENDANT PRESUMED TO INTEND INJURY BY SPEAKING WORDS SLANDEROUS PER SE AND UNPRIVILEGED.—A defendant who falsely charged plaintiff with larceny of a truck is presumed to have intended the injury to plaintiff which the slander was calculated to inflict, where there was no claim of even a qualified privilege, and in such circumstances damages are implied, and every person is presumed to intend the natural and probable consequences of his own act.

4. LIBEL AND SLANDER—INTENT TO INJURE IS IMMATERIAL ON QUESTION OF COMPENSATORY DAMAGES.—It is immaterial on the question of compensatory damages whether the defendant intended to cause the injury which resulted from the unprivileged utterance of words slanderous *per se.*

5. LIBEL AND SLANDER — INSTRUCTION AUTHORIZING ALLOWANCE FOR "PROBABLE" FUTURE INJURY SLANDER WAS CALCULATED TO INFLICT IS CORRECT.—In an action for slander, an instruction that the jury might consider the present and probable future injury which the uttering of the words was calculated to inflict was not erroneous as permitting the jury to conjecture the damages, since the

word "probable" is defined as having more evidence for than against, and implies more than a mere possibility, so as to be equivalent to a requirement that the future injury must be established by a preponderance of the evidence, which is sufficient; it being unnecessary that such injury be established with a reasonable certainty.

6. LIBEL AND SLANDER—QUESTION OF PRESENT AND FUTURE INJURY FROM SLANDER IS PECULIARLY FOR THE JURY.—Since proof of the utterance of slanderous words not shown to be true or privileged is all that is necessary to establish damages not asked for specially, it is peculiarly the province of the jury to fix the amount of such damages, whether they have been already suffered or are yet to come, since both present and future damages must be recovered in the same action, and no one can, say more accurately than the jury how much damage they may cause in the future.

7. LIBEL AND SLANDER — INSTRUCTION HELD NOT ERRONEOUS AS REQUIRING AN ALLOWANCE OF PUNITIVE DAMAGES.—In an action for slander, an instruction that, if the jury found, for plaintiff, they were not confined in assessing the damages to compensation, but might, in addition thereto, assess punitive damages provided the slanderous words were uttered by defendant maliciously and wantonly, was not erroneous as requiring the jury to allow punitive damages.

8. LIBEL AND SLANDER—MALICE IS PRESUMED FROM UTTERING WORDS ACTIONABLE PER SE.—In action for defamation of character, malice is presumed when the words uttered are actionable *per se.*

9. LIBEL AND SLANDER—EVIDENCE OF PLAINTIFF HELD TO AUTHORIZE INSTRUCTION ALLOWING PUNITIVE DAMAGES FOR MALICIOUS UTTERANCE.—In an action for slander, evidence that defendant had told plaintiff that, if the latter did not turn over to defendant his claim for insurance, defendant would see plaintiff did not get any of it, and that defendant refused to speak to plaintiff when they met, *held* sufficient, if believed by the jury, to sustain a finding the slander was maliciously or wantonly spoken, so as to authorize punitive damages.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Affirmed.

Mr. Edward Wilder and Messrs. Hayes, Laney & Allee, for Appellant.

Messrs. Forest & Shepherd, for Appellee.

McALISTER, J.—This is an action for damages which appellee, C. D. Dillingham, claims to have sustained as a result of certain slanderous statements alleged to have been made concerning him by the appellant, W. E. Conard. From a judgment for the former in the sum of $1,300 entered upon the verdict of a jury, and an order denying the latter's motion for new trial, he appeals.

The cause of action is succinctly stated in the following complaint:

"That on or about the twenty-fifth day of June, 1919, in the county of Maricopa, state of Arizona, in the presence of divers persons, the defendant did willfully, wantonly, and maliciously speak of and concerning the plaintiff certain false, defamatory, and slanderous words, to wit, 'That the plaintiff had stolen a Ford truck, and that plaintiff had burned the store and building known as the West End Store, and merchandise therein contained, for the purpose of obtaining the insurance thereon;' that, by reason of said false, defamatory, and slanderous words so willfully, wantonly, and maliciously spoken of and concerning plaintiff, plaintiff has been greatly injured in his good name and fame, and has been subjected to arrest for the crime of arson, and has been compelled to bring a suit at law in order to recover his insurance, and has been damaged in the sum of $2,000 actual damages and $5,000 punitive or exemplary damages."

In his answer appellant denies these allegations, but admits saying "that he understood plaintiff had stolen a Ford truck," and that the same upon information and belief was true. He alleges further that on or about the fifth day of June, 1919, and prior to the alleged time of speaking the words quoted, he understood that appellee feloniously stole and carried away the Ford truck, the property of J. E. Anderson; that the words spoken were a republication of current news, and that at the time

he had an honest belief in their truth, based upon statements made to him by said J. E. Anderson and others. It is further denied that appellee was injured in any sum whatsoever by the words alleged to have been spoken, or that such words were uttered maliciously.

It might be helpful to state briefly the circumstances out of which the cause of action grew. Up to May 1, 1919, appellee had been engaged in the mercantile business in Maricopa county, Arizona, at what is known as the West End Store, located some twelve or fifteen miles northwesterly from the city of Phoenix, the building itself being the property of appellant. On that day he entered into a written agreement with one J. E. Anderson by which he agreed to sell and convey to the latter his stock of merchandise and a one-ton Ford truck, together with a tract of land containing 160 acres, situated in Roger Mills county, Oklahoma, in consideration for which Anderson agreed to convey to him 160 acres of land in Beckham county, Oklahoma, and to assume and pay an indebtedness of $1,250 against the merchandise and store equipment The agreement provided also that an abstract of title to each party's land should be prepared within a reasonable time, and, if any latent defect in either or both should be disclosed, it would be the duty of the one in whose title it appeared to have it removed within a like period of time. In pursuance of another provision of the contract Anderson that day took possession of both the stock of merchandise and Ford truck, and according to his testimony employed appellee, who, together with his family, resided in a portion of the store building from then to May 23d, to assist him in a clerical way about the store. During the night of May 23d the store building and its entire contents, except two truck loads

of the household furniture and personal effects of appellee, were burned. Neither party at the time had conveyed his real estate, though Anderson had paid $400 or $500 on the Ford truck and about $700 on the store indebtedness. Appellee had notified creditors in Phoenix of the change in ownership and possession, and had stated to several patrons of the store that he was employed by Anderson.

A few days after the fire Anderson drove the truck to Phoenix, and while it was parked the wife of appellee drove it off without the knowledge or consent of the former, and, according to appellee's testimony, upon the advice of his counsel that he had a right to repossess it. Anderson telephoned appellant, who was then conducting a store in a garage on the premises where the store burned, that appellee had stolen his truck, and appellant repeated this statement to several people, who later came to his store. Early in June, 1919, appellee was arrested upon complaint of Anderson charging him with the larceny of the Ford truck, and also for the crime of arson in the burning of the store building, but after a hearing both charges were dismissed on motion of the county attorney because of the insufficiency of the evidence to hold him to answer.

Upon the trial no evidence was offered in support of the allegation that appellant had stated that appellee had burned the store for the purpose of obtaining the insurance, so the court withdrew this portion of the complaint from the jury's consideration, and only the statement regarding the alleged larceny of the truck remained as a basis for damages.

The errors assigned deal entirely with the instructions. The first is that the court in effect instructed the jury to find for the plaintiff, and in support of this contention appellant refers to the following

excerpts from the charge, which for convenience we have numbered from 1 to 5:

"(1) Before the plaintiff in this case is entitled to a verdict from you, he must prove by a preponderance of the evidence that Conard said that Dillingham had stolen a Ford truck.

"(2) Now, I charge you, as a matter of law, that those words are slanderous in their nature, and if they are spoken—if they were spoken as alleged in the complaint—then the plaintiff is entitled to a verdict, unless you should also find that the words so spoken were true.

"(3) That is to say, if you find from the evidence that Conard did say that, then the plaintiff is entitled to a verdict, unless you shall also find by a preponderance of the evidence that such statement was true in fact at the time when the words were uttered.

"(4) In an action for slander, the law implies damages for the publication or for the utterance of actionable words, and also that the defendant intended the injury which the slander is calculated to inflict.

"(5) The law affords to every man protection in his reputation and good name, and one who assails such good reputation or character, and does so by words or language imputing or implying moral turpitude, does so at his peril, and, in an action for slander such as the present one, must prove the truth thereof by a preponderance of the evidence."

These instructions, it is claimed, practically direct a verdict for the plaintiff in some amount. A reading of the entire record, however, does not substantiate this contention, but rather discloses that they go no further than the law and facts warrant. No. 1, it is said, has this effect because it limits the proof necessary to a verdict for plaintiff to a single proposition. It will be observed, however, that it merely tells the jury that the basic fact in the case, to wit, that the defendant uttered the alleged slanderous statement, must be proven by a preponderance

of the evidence before the plaintiff is entitled to a verdict. It does not say, and, in view of the subsequent instructions, the jury could not have so understood it, that this was the only fact to be considered in determining whether the plaintiff was entitled to a verdict.

It is contended that Nos. 2, 3 and 5 direct a verdict for the plaintiff if it be found that the alleged slanderous words were spoken and were at the time untrue, and that this is an invasion of the province of the jury which could have returned a verdict for the defendant, if it saw fit, notwithstanding the utterance and falsity of the alleged statement, inasmuch as it was the sole judge of the question of damages, the action being one for slander. If there had been evidence of other defenses than the truth of the alleged statement, the jury might have had such right, but, when the uttering of words slanderous *per se* is shown, and they are not proven to have been true, there being no contention that their communication was privileged, the jury's duty to return a verdict for the plaintiff in some amount is not open to question, for, as the court correctly instructed in No. 4, "in an action for slander the law implies damages for the publication or for the utterance of actionable words," and "in every case where the language is false, and not privileged, and where it is *prima facie* libelous, the plaintiff is entitled to at least nominal damages." Merrill's Newspaper Libel, p. 251; 25 Cyc. 539; 17 R. C. L. 264, 430, 432; *See. Martin* v. *Desnoyer*, 1 Minn. 156, 61 Am. Dec. 494; *Tracy* v. *Hacket*, 19 Ind. App. 133, 65 Am. St. Rep. 398, 49 N. E. 185.

Whether injury was intended by the utterance of such words, it is claimed, was a question of fact for the jury, and to instruct that proof of their utterance implies "that the defendant intended the injury which

the slander is · calculated to inflict" decides this question for the jury, and places further emphasis on its duty to return a verdict for the plaintiff. The words alleged to have been uttered are unquestionably slanderous *per se,* because they charge plaintiff with having committed the crime of larceny (17 R. C. L. 270 and note; *Byam* v. *Collins,* 111 N. Y. 143, 7 Am. St. Rep. 726, 19 N. E. 75, 2 L. R. A. 129), and proof of their utterance without a showing that they were true or that they were communicated in the exercise of at least a qualified privilege establishes the intention to injure, because under such circumstances damages are implied, and every· person is presumed to intend the natural and probable consequences of his own acts (17 R. C. L. 323; Newell on Slander and Libel, 3d ed., 397), though it is immaterial on the question of compensatory damages whether they were intended or not, for:

"The publication of a libel is a wrongful act, presumably injurious to those persons to whom it relates, and in the absence of legal excuse gives a right of recovery irrespective of the intent of the defendant who published it, and this although he had reason to believe the statement to be true, and was actuated by an honest or even commendable motive in making the publication." *Holmes* v. *Jones,* 147 N. Y. 59, 49 Am. St. Rep. 646, 41 N. E. 409; 17 R. C. L. 323.

The jury was instructed that, if it concluded that the plaintiff, was entitled to recover, in fixing the amount of his damage it might take into consideration "the present and probable future injury to the plaintiff's character which the uttering of the words was calculated to inflict." The words "probable" and "calculated," it is contended, did not constitute the correct method of measuring future damage or injury, because they led "the jury into the realm of chance and conjecture"; but it is suggested that the words "reasonably certain" to ensue would have

furnished the proper guide, in that they would have required proof of more than a mere likelihood of injury or tendency in that direction. This contention seems to be supported by the weight of authority in cases growing out of personal injuries, though there are many jurisdictions in which the words "reasonable probability" are sufficient even in this class of litigation. *Johnson* v. *Connecticut Co.*, 85 Conn. 433, 83 Atl. 530; *Pullen* v. *Boston Elevated Ry. Co.*, 208 Mass. 356, 94 N. E. 469; *Arkansas City* v. *Payne*, 80 Kan. 353, 18 Ann. Cas. 82, 102 Pac. 781; *Snook* v. *City of Anaconda*, 26 Mont. 128, 66 Pac. 756; *Gulf etc. Ry. Co.* v. *Harriett*, 80 Tex. 73, 15 S. W. 556. But the only authority cited which applies this rule in an action for slander is *Pouchan* v. *Godeau*, 167 Cal. 692, 140 Pac. 952, and it is based on a statutory provision of that state limiting recovery for future damages to those "certain to result in the future." And, while it is claimed that this is merely declaratory of the common law, yet no case of slander in which the common law is held to require proof of future damages to a "reasonable certainty" has been called to our attention. If proof of damages, either past or future, must be so nearly conclusive as to be "reasonably certain" in order to justify recovery in an action for slander, it would be extremely difficult, if not impossible, to prosecute an action of this character successfully, because:

"Certainty," as said in *Johnson* v. *Connecticut Co.*, above, "is freedom from doubt, and if a plaintiff is required to prove that future apprehended consequences are reasonably free from doubt, he has imposed upon him a burden far beyond the ordinary requirement of proof in a civil action and approximating closely to the proof beyond a reasonable doubt of the criminal action."

And certainly there is no reason why proof of a thing yet to occur should be required to approach

more nearly the absolute than proof of a past fact. The issues in a civil action, whether they arise out of past or future facts, are required to be proven by a preponderance or greater weight of the evidence, and, when this is sufficient to turn the balance, however slight, in favor of him upon whom this affirmative rests, the burden the law thus imposes has been met, and this entitles him to a finding. Hence, in using the word "probable," the court undoubtedly intended to, and did, convey to the jury the impression that any future damage appellee might suffer as a result of the alleged slanderous words must be established by a preponderance of the evidence, for the word "probable" is defined as having more evidence than the contrary, or as having more evidence for than against. *Bailey* v. *City of Centerville,* 108 Iowa, 20, 78 N. W. 831. It implies more than a mere possibility. As said in *Chicago etc. R. Co.* v. *Gelvin,* 238 Fed. 14, L. R. A. 1917C, 983, 151 C. C. A. 90:

"Things or results which are only possible cannot be spoken of as either probable or natural, for the latter are those things or events which are likely to happen, and which, for that reason, should be foreseen. Things which are possible may never happen, but those which are natural or probable are those which do happen, and happen with such frequency and regularity as to become a matter of definite inference."

"In finding the measure of damages," said the Supreme Court of Nebraska in *Bolt* v. *Budwig,* 19 Neb. 739, 28 N. W. 280, which was an action for slander, "the jury may take into consideration the mental suffering produced, if any, by the uttering of the slanderous words, if they believe from the evidence that such suffering has been endured by the plaintiff, . . . and the present or probable future injury, if any, to the plaintiff's . . . character, which the uttering of the words was calculated to inflict."

This instruction was again approved in *Bee Publishing Co.* v. *World Publishing Co.,* 59 Neb. 7..3, 82 N. W. 28, and this remark added:

"In such case, the jury should take into account the probable future as well as the actual past, and assess the damages once for all."

And in Odgers, on Libel and Slander (fifth edition), 376, it is said:

"They should therefore take into consideration not only the damage that has accrued but also such damage, if any, as will arise in the future from the defendant's defamatory words."

And in *True* v. *Plumley,* 36 Me. 466, the court says:

"The jury may regard the probable future as well as the actual past."

Since, therefore, proof of the utterance of actionable words not shown to be true or privileged is all that is required to establish damages not asked for specially, it is peculiarly the province of the jury to say how much these are, whether already suffered or yet to come, for, if both are wanted, they must be recovered in one action, and what the future may bring forth to the injury of the slandered must be determined from the evidence of what has already transpired. A conclusion as to the one is as easily reached as to the other, because words of this character, when once spoken and thus started on their mission of mischief, cannot be recalled, or their repetition to others prevented, or their effect completely overcome, and no one can say more accurately than a jury of twelve men how long or how damaging their journey will be.

It is contended that the following instruction amounts to a request to the jury to find punitive damages when in fact it should have been directed to consider only actual or compensatory damages:

"If the jury under the evidence and the instructions find the issues for the plaintiff, then, in assessing plaintiff's damages, you are not confined to such damages as will simply compensate the plaintiff for such injury as the evidence shows he has received by reason of the uttering and publishing of the defamatory words charged in the complaint, but you may in addition thereto assess against the defendant by way of punishment and as an example to others such damages as the jury in their sound judgment, under all the evidence in the case, believed the defendant ought to pay, not exceeding, in any event, the amount of damages claimed by the plaintiff in the complaint provided you believe from the evidence that the slanderous words were uttered by the defendant maliciously and wantonly."

This does not request, but correctly informs, the jury that it may assess punitive in addition to compensatory damages if it finds the issues for the plaintiff and believes from the evidence that the slanderous words were uttered by defendant maliciously and wantonly. It is claimed, however, that the case is not one justifying punitive or exemplary damages, because there is no evidence that the slanderous statement was uttered maliciously. It is universally held, however, in actions for defamation of character, that malice is presumed when the words uttered are actionable *per se* (17 R. C. L. 322), and, while in some jurisdictions punitive damages may be awarded in such cases, malice of either law or fact being sufficient (*Callahan* v. *Ingram,* 122 Mo. 355, 43 Am. St. Rep. 583, 26 S. W. 1020; *Hintz* v. *Graupner,* 138 Ill. 158, 27 N. E. 935; *Fresh* v. *Cutter,* 73 Md. 87, 25 Am. St. Rep. 575, 20 Atl. 774, 10 L. R. A. 67), yet the weight of authority is to the effect that malice in fact must be shown before damages of this character may be recovered (*Childers* v. *San Jose Mercury Printing etc. Co.,* 105 Cal. 284, 45 Am. St. Rep. 40, 38 Pac. 903; *Republican Pub. Co.* v.

*Conroy,* 5 Colo. App. 262, 38 Pac. 423; *Nailor* v. *Ponder,* 1 Marv. (Del.) 408, 41 Atl. 88; *Walker* v. *Wickens,* 49 Kan. 42, 30 Pac. 181; *Mattice* v. *Wilcox,* 147 N. Y. 624, 42 N. E. 270; *Reed* v. *Keith,* 99 Wis. 672, 75 N. W. 392; *Broughton* v. *McGrew,* 39 Fed. 672, 5 L. R. A. 406). Malice in fact as distinguished from malice in law, which is "a wrongful act done intentionally without just cause or excuse," is defined in *Childers* v. *San Jose Mercury Printing etc. Cc.,* above, as "a spiteful and rancorous disposition which causes an act to be done for mischief" and "may be established by evidence *aliunde,* or may appear from the face of the publication itself."

The defamatory language charged appellee with the commission of a serious offense, grand larceny, which was found by the jury to be both false and unprivileged, and was slanderous *per se.* Appellant did not seriously contend that it was either true or privileged, but claimed that it was uttered without malice or ill will. There was evidence, however, when considered in connection with the defamatory words themselves, from which the jury might have drawn the conclusion that they were prompted by a malicious motive.

Appellee testified as follows regarding a conversation with appellant:

"A year ago I had a conversation something to the effect that he told me that, if I did not turn over this claim for insurance money to him, he would see that I did not get any of it."

And again, regarding another conversation:

"Well, he said I would be prosecuted if I didn't do something to that effect."

And again:

"At the second conversation with Mr. Conard I told Mr. Conard that I had heard that he had accused me of stealing the truck, and that he had also gone to

the insurance company and told them I had burned up the business, and that I wanted him to stop it. He never referred to it—didn't say a word. I further told him that if he didn't do it there would be trouble about it; I would make him prove it. He made a statement that there would be plenty of trouble soon."

And again:

"Mr. Conard in one of these conversations made a statement to the effect that he would see that I did not get any insurance."

And again:

"Q. Did Mr. Conard ever say anything that would lead you to believe that he was sore at you?
"A. Well, I passed him a good many times in the road, and he did not speak to me."

This evidence, if believed by the jury, the sole judge of its weight, was sufficient to support a verdict for exemplary or punitive damages when considered in connection with the slanderous statement itself.

No error appearing in the record, the judgment is affirmed.

ROSS, C. J., and FLANIGAN, J., concur.