265 P.2d 425

McCLINTON v. RICE.

No. 5663.

Supreme Court of Arizona.

Dec. 21, 1953.

360

Terrance A. Carson, Phoenix, for appellant.

V. L. Hash and Virginia Hash, Phoenix, for appellee.

STANFORD, Chief Justice.

This case, tried before a jury, involving slander and malicious prosecution, was appealed from a judgment for defendant Rice on a directed verdict after the plaintiff had rested his case in the trial court. No motion for a new trial was made; however, the motion for a directed verdict was opposed and argued.

Appellant McClinton, plaintiff below, alleged in his complaint that the appellee had stated to various persons, one being a United States Postal Inspector, that appellant had sent an obscene letter through the mail; that appellee made the statement wilfully, maliciously, without probable cause, and knowing that the statement was false; that as a result of the statement having been made to these persons, the appellant was indicted by the grand jury of the United States, sitting at Phoenix, Arizona, was confined in the county jail, compelled to give bond, hire counsel, undergo the burden and expense of defending himself on the criminal charge of sending obscene letters through the mail, and, though subsequently acquitted, his reputation has been injured, and the appellee should pay not only actual damages but punitive damages as well.

One procedural matter should be considered before continuing with this opinion.

Appellee contends that since no motion for a new trial was made, the appellant may not ask this court to consider the sufficiency of the evidence to set aside the directed verdict and judgment below, and he cites section 21–1703, A.C.A.1939, as foreclosing appellant from asking this court to review the evidence. That section reads in part:

"Orders, rulings, and evidence reviewable.—Upon an appeal from a final judgment the Supreme Court shall review any intermediate order involving the merits and necessarily affecting the judgment, and all orders and rulings assigned as error, whether a motion for a new trial was made or not. * * *; *on an appeal from a final judgment the Supreme Court shall not, however, consider the sufficiency of the evidence to sustain the verdict or judgment in an action tried before a jury unless a motion for a new trial shall have been made.*" (Emphasis supplied.)

Appellee cites numerous cases to uphold his view, but all of his cases may be distinguished from the present situation. He bases his contention on reasoning best illustrated by our decision in Putnam v. Putnam, 3 Ariz. 182, 24 P. 320, 322 (Sub nom. Sutherland v. Putnam), decided by the Territorial Court in 1890, where it is said:

"* * * The only relief that appellants ask in this court, and all that this court can grant, is a new trial of the cause in the trial court. If it be true that the evidence is insufficient to warrant the decision, it is error. If it is error, we must presume that the court below would, upon application, have corrected it. If, however, the court below had denied the motion for a new trial, such ruling could have been presented here for review. It is provided by the statute that the only remedy appellants seek here may have been awarded to them by the court below on motion. That method is prompt, efficacious, and inexpensive; and we think the appellants should first resort to it before coming to the appellate court. * * *"

Appellant relies in part upon the reasoning best illustrated by the decision in National Surety Co. v. County of Pinal, 30 Ariz. 383, 247 P. 135, 136, decided in 1926. Here this court said:

"The motion for a new trial was not filed within 10 days after the rendition of judgment as provided by statute. * * * This, it is asserted, was necessary to confer jurisdiction on this court to consider the sufficiency of the evidence to substantiate a verdict or judgment *in an action tried before a jury* * * *. It may be seriously doubted if it was the intention to apply such rule when, as in this case, the verdict is directed by the court. The reason for the rule would hardly apply, since

the verdict, while nominally that of the jury, is in fact the conclusion of the court. Paragraph 1231, supra, also provides that we 'shall review all orders and rulings made by the court below, which are assigned as error, whether a motion for a new trial is made or not.' This is certainly broad enough to cover the court's order directing the verdict. Law v. Smith, 34 Utah 394, 98 P. 300. * * *"

It will be noticed that in the National Surety Co. case above, a motion for a new trial was made, but since it was made late, the court treated it as though it had never been made.

■ The Putnam decision and the National Surety Co. case are not in conflict. Both cases are based upon the same basic reasoning; and, though section 21–1703, A.C.A.1939 states the general rule that a motion for a new trial is necessary to bring before this court consideration of the sufficiency or insufficiency of evidence, the legislature did not intend for this statute to prevent an appeal on such grounds in the case under consideration. The purpose of a motion is to obtain a ruling or an order directing that some act be done in favor of the applicant, and the essentials of a motion are that the attention of the court must be called to the particular matter or request, and that the court be given an opportunity to rule as to the

matter. See Genardini v. Kline, 21 Ariz. 523, 190 P. 568. Appellee's motion for directed verdict was based upon grounds that appellant had offered insufficient evidence to make a case for the jury. Arguments were made to the court; the sufficiency of the evidence was pointedly before the lower court; therefore, to require a further motion for a new trial to be made in this particular case would be to require a hollow procedure opposed to the reasons and purposes for which section 21–1703 exists; and, we hold that we may consider the sufficiency of the evidence.

As to appellant's only assignment of error and reading it in conjunction with the comments made by the trial judge upon granting the motion for a directed verdict, two broad grounds appear which are actually the salient points in this appeal; (1) Is there evidence, which should have gone to the jury for its consideration, tending to prove the elements of slander, especially slander per se; and (2), is there evidence, which should have gone to the jury for its consideration, tending to prove malicious prosecution; more particularly, was there sufficient proof of the element of want of probable cause?

Condensed, the testimony offered by appellant regarding slander consists of evidence of four conversations. The first was between appellee and one Willie Campbell, several days after appellant's arrest, and appellee, called as an adverse witness un-

der section 21–922, A.C.A.1939, testified as follows:

"Q. Well, did you make the statement * * * McClinton had sent an obscene letter through the mail?

"A. No."

* * * * * *

"Q. * * * [T]hat the obscene letter was in McClinton's handwriting?"

* * * * * *

"A. I told him that I thought so. It looked like it."

And, appellee testified that he knew appellant's handwriting.

The second conversation took place during the time that the appellant was in jail awaiting trial for sending an obscene letter through the mail. A Mr. Sam Ford testified that it took place in the latter part of June of 1949 at his home; he was present as were Mr. Rice and one Jerry Johnson. Sam Ford was asked to repeat the conversation, and he testified:

"Yes, sir, there was a conversation, and I asked the question to Mr. Rice direct, did he know that McClinton wrote that letter. He said yes, he did know. I asked him did he see the letter. He said no, he didn't see it. And I asked him did he believe * * McClinton would write a letter like that. He said, 'Yes.'"

Later a witness named Willie Campbell was called to testify to a third conversation wherein the appellee allegedly slandered the appellant in front of numerous persons in the hallway of the Federal Courthouse at the time appellant was being prosecuted for the crime of sending an obscene letter through the mail. The testimony follows:

"* * * Mr. Rice told me that they had the right man for writing the letter, and he said that he told them to go out and get Mr. McClinton, he was the right man that wrote the letter."

Another witness, Nathan Prince, testified to this conversation, saying:

"Well, I don't remember any further conversation, because I didn't stand to listen at all of it, but I did hear him (appellee) say they had the right man for the letter, for he had McClinton's handwrite."

And, later the appellant himself was called to testify to the above conversation, from which testimony we quote as follows:

"Well, anyway, when they came out he and Mr. Campbell had a conversation there, Mr. Rice and Mr. Campbell. I was standing opposite, over on the opposite wall of the hall. Mr. Rice told him that he was able to identify my handwriting in the obscene letter, but he says, 'I am the cause, and that is the reason I am up here, because I am to identify that handwriting; but it seems to me,' he says, 'that they

exchanged the letter,' but he hadn't checked the report of the exchange. He said, 'They switched letters on me' from the time that the Postal Inspector had been over to the shop with it when he were given the information that I was the man that wrote this obscene letter. I heard him say it, that, 'I am to identify it,' because I heard him state that to Mr. Campbell personally."

Sam Ford testified to a fourth conversation with the appellee which took place after the acquittal of appellant of the charge of sending an obscene letter through the mail:

"Q. * * * And something was said about the acquittal of McClinton?"

* * * * * *

"A. He (appellee) said they had acquitted him (appellant) but they had acquitted a guilty man, and if he possibly had a half a chance hereafter, he would never be acquitted no more."

■ In this appeal, regarding the tort of slander, several questions arise which shall be set forth and answered in the following paragraphs. And in this opinion we shall follow the rule heretofore stated in Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201, 204, wherein we said:

"Ordinarily an appellate court in determining an appeal views the evidence, where it is conflicting, in the light most favorable to a sustaining of the lower court's judgment. City of Bisbee v. Cochise County, 50 Ariz. 360, 72 P.2d 439. A reverse rule however applies where, as here the trial court directs the jury to return a verdict for the defendants. The conflicting evidence then must be viewed in a light most favorable to plaintiff. Cope v. Southern Pac. Co., 66 Ariz. 197, 185 P.2d 772; Dieterlé v. Yellow Cab Co., supra [34 Cal.App.2d 97, 93 P.2d 171]. * * *."

■ Was there sufficient evidence to present to the jury for its consideration of a communication made by the appellee to some one other than the appellant, this being in law what is termed, a "publication"? Several witnesses and appellee himself stated that communications were made to various third parties. It may be that the jury would not believe that there had been any of these conversations at all; but, regardless of this, there was obviously ample evidence of a communication, perhaps several, and appellant was entitled to have the evidence of same considered by the jury.

■ Was there sufficient evidence defamatory matter was communicated? The alleged defamatory matter is the charge of having sent an obscene letter through the mail. This charge, if true, being a crime (See Section 1461, 18 U.S.C.A.) is defamatory per se, Wahl v. State, 39 Ariz. 62, 3 P.2d 1052 (Robbery); Conard v. Dillingham, 23 Ariz. 596, 206 P. 166 (Theft); Kinsey v. Real Detective Pub.

Co., 52 Ariz. 353, 80 P.2d 964 (Participation in disposing of dead victim of abortion ring, or merely charged with concealing perpetration of a crime though innocently acting therein); Arizona Pub. Co. v. Harris, 20 Ariz. 446, 181 P. 373 (Sedition); Horn v. Ruess, 72 Ariz. 132, 231 P.2d 756 (Theft). Slander per se is actionable without proof of special damages, Central Arizona Light & Power Co. v. Akers, 45 Ariz. 526, 46 P.2d 126; Conard v. Dillingham, supra; Horn v. Ruess, supra; and Ilitzky v. Goodman, 57 Ariz. 216, 112 P.2d 860, because it is a communication of such a nature that the court can presume as a matter of law that the communication will tend to degrade or disgrace the party defamed, Baxter v. Dorrington, 13 Ariz. 140, 108 P. 459. Therefore, the subject matter being defamatory per se, and the injury to the appellant being presumed without proof of special damages, then the only evidence in this case which appellant had to offer below was that this subject matter was communicated. Without reviewing all of the conversations heretofore set out, obviously evidence of the latter two conversations, i. e., the one in the hallway of the Federal Courthouse, and the one at the home of Sam Ford after appellant was acquitted, was evidence of publications of matter defamatory per se.

 Appellee contends that since appellant alleged the untruth of the subject matter, he had to offer evidence of falsity. Is this the law? Upon proof of a defamatory publication, falsity is presumed, Central Arizona Light & Power Co. v. Akers, supra. It is fundamental to say that truth is an affirmative defense.

We said in Broking v. Phoenix Newspapers, Inc., 76 Ariz. 334, 264 P.2d 413, that:

"* * * Unless the publication in the instant case was privileged or qualifiedly privileged, the proof of publication of the article carried with it the presumption of its falsity and of malice toward the plaintiff and the burden was upon the defendant to prove both the truth of the publication and a lack of malice toward plaintiff. * * *"

The same rule applies to slander as to libel. The statement alleged to have been made by appellee after appellant's acquittal upon charges preferred, based upon his previous statements certainly were not privileged communications, whatever may have been the case in his statement to the postal inspector. Therefore appellant satisfied the burden of proof as to statements made subsequent to the trial when he proved the publication thereof to the witnesses who testified concerning the same.

 And, whereas the issue of truth may well have been raised, nevertheless the burden of going forth with the evidence of an affirmative defense is upon him who would assert the defense. Applying these rules to this case, we see that appellant had established his case by giving

evidence of a publication of defamatory matter by the appellee; therefore, falsity became presumed, and appellee became burdened with going forth with evidence of truth. Secondly, truth being an affirmative defense, even though falsity was alleged and though it may have been placed in issue, it was up to the appellee to offer evidence of the truth of his charge.

■■■■■ Lastly, under our consideration of slander, appellee argues that where, as the facts show here, the accuser believes his charge is true, then appellant has not established a case for the jury. We have held before that it makes no difference that the appellee thought that what he said was true. Every person is presumed to intend the natural and probable consequences of his own act, Conard v. Dillingham, supra. Belief in the truth of his charges does, however, go to the heart of punitive damages which were alleged in this case, and the jury might consider the spirit with which something was spoken in determining whether the speaker was vicious, unreasonably thoughtless, etc., Conard v. Dillingham, supra; and, Horn v. Ruess, supra, wherein vindictiveness and conspiracy were considered. The fact remains, however, that the law does charge every one with liability for natural and probable consequences of his acts; such being the case, appellant was entitled to have his case presented to the jury as to slander.

■■■■■ The final question presented on this appeal is: Did appellant establish a case of malicious prosecution which should have gone to the jury? More specifically, did he show want of probable cause, one of the essentials of malicious prosecution? In this regard, two additional points have been raised in the briefs of counsel. (1) Though the trial court stated it believed that there was sufficient evidence of malice, the question of whether there was sufficient evidence of malice has been argued. Apparently counsel for appellant believes that malice shows lack of probable cause. Probable cause and malice are two separate elements of the tort of malicious prosecution, McDonald v. Atlantic & Pac. R. Co., 3 Ariz. 96, 21 P. 338; Cunningham v. Moreno, 9 Ariz. 300, 80 P. 327; Griswold v. Horne, 19 Ariz. 56, 165 P. 318, L.R.A.1918A, 862; and Leeker v. Ybanez, 24 Ariz. 574, 211 P. 864; and the often cited case of Glenn v. Lawrence, 280 Ill. 581, 117 N.E. 757. Evidence of lack of probable cause allows, at the most, a mere inference, but not necessarily one, of malice, but the opposite is not true, Cunningham v. Moreno, supra; Kellogg v. Ford, 70 Or. 213, 139 P. 751; Halladay v. State Bank of Fairfield, 66 Mont. 111, 212 P. 861, and we agree with those courts that hold that the lack of probable cause may not be inferred from the existence of malice. Stewart v. Sonneborn, 98 U.S. 187, 25 L.Ed. 116; Plummer v. Collins, 1 Boyce, Del., 281, 77 A. 750; Moneyweight Scale Co. v. McCormick, 109 Md. 170, 72 A. 537; Rouse v. Burnham, 10 Cir., 51 F.2d 709. The accuser might have proper or improper motives in fact,

but the element of lack of probable cause as shall be subsequently defined must be shown, Griswold v. Horne, supra; Stewart v. Sonneborn, supra; and Smith v. Pierson, Tex.Civ.App.1912, 151 S.W. 1113.

(2) Finally, appellant appears to have confused two elements of malicious prosecution: (a) institution or continuation of an action against the accused, and (b) institution or continuation of an action without probable cause. That an action is instituted is, of course, fundamental to this tort, and that the accuser was instrumental in its institution or continuation is necessary, Pertitta v. Herndon, 175 Md. 560, 3 A.2d 502, 120 A.L.R. 1317; Shannon v. Simms, 146 Ala. 673, 40 So. 574. However, probable cause is: a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense, Smith v. Hensley, 107 Colo. 180, 109 P.2d 909; Gray v. Abboud, 184 Okl. 331, 87 P.2d 144; McAfee v. Los Angeles Gas & Electric Corporation, 215 Cal. 219, 9 P.2d 212; Luther v. First Bank of Troy, 64 Idaho 416, 133 P.2d 717. What facts are sufficient to constitute probable cause is a question of law. The test generally applied is: upon the appearances presented to the defendant, would a reasonably prudent man have instituted or continued the proceeding? Rickman v. Safeway Stores, 124 Mont. 451, 227 P.2d 607; Tucker v. Bartlett, 97 Kan. 163, 155 P. 1.

Suffice to say, "without probable cause", as discussed above, being a necessary element to the tort of malicious prosecution, the law has become settled that where there is probable cause to institute a proceeding against the accused, such fact constitutes a complete and absolute defense or bar to an action for malicious prosecution, Cunningham v. Moreno, supra; 54 C.J.S., Malicious Prosecution, § 18, page 972; § 36, page 998. Answering the second broad question upon this appeal we see that appellant did not present, as a matter of law, sufficient evidence of facts which would show a lack of probable cause. Without setting forth all of the testimony, the record, though strongly showing malice, is almost void of any evidence tending to show that appellee instituted any proceedings upon appearances, which would have lead an ordinarily prudent man not to institute proceedings. Appellee stated a belief that letters were "switched" on him before and at the trial in the Federal Court, and he further based his belief upon his own knowledge of appellant's handwriting. The accuser is not necessarily required to verify his information where it appears to be reliable. Johnson v. Southern Pac. Co., 157 Cal. 333, 107 P. 611; Kezer v. Dewelle-Kaiser Co., 222 App.Div. 350, 225 N.Y.S. 722; Kansas & Texas Coal Co. v. Galloway, 71 Ark. 351, 74 S.W. 521, 100 Am.St. Rep. 79. No other proper evidence as to relief was introduced, and it is incumbent upon the plaintiff to show a prima facie want of probable cause. Cunningham v.

Moreno, supra. A man, believing the truth of his utterances, nevertheless may defame and commit slander, but a reasonable belief, founded upon appearances, of the truth of his utterances is probable cause; and he cannot then be said to be without probable cause; therefore, an action for malicious prosecution cannot be maintained.

The element of lack of probable cause not having been shown, the order of the trial court was proper, and judgment is affirmed as to malicious prosecution. Sufficient evidence of the elements of slander having been presented, a new trial is directed upon this claim for relief.

PHELPS, LA PRADE, UDALL and WINDES, JJ., concur.